CORNELIUS F. TIMPSON, Respondent, *v.* HENRY ALLEN et al., Appellants.

STOCKBROKER — RELATION OF BROKER AND CUSTOMER — ACCOUNT IN NAME OF AND CONDUCTED BY THIRD PARTY. In an action against a stockbroker to compel him to account, as the plaintiff's broker, for a loss occasioned by the dishonesty of a third person, it is a deduction of law that the defendant was not acting as the plaintiff's broker in the transactions in suit, where the facts found in favor of the plaintiff show that the transactions were had (without personal knowledge by the defendant, or facts to charge him with notice of, the plaintiff's connection therewith) through directions given by and under an account in the name of such third person, who acted ostensibly as a clerk of the defendant at his office, but who was not in his direct employ, being employed and paid as an

65

assistant by an employee of the defendant, and who was enabled by the plaintiff's own acts to conduct the account secretly between the plaintiff and himself, so far as the defendant was concerned; and where, giving the plaintiff the benefit of all that can be fairly implied from such third person's connection with the defendant's business, the facts do not warrant the assumption that such person was authorized by the defendant to conduct the secret stock transactions of. the plaintiff in his own name ,and in the manner pursued, but do show that he acted as the plaintiff's agent therein.

*Timpson* v. *Allen*, 7 Misc. Rep. 323, reversed.

(Argued April 28, 1896; decided May 26, 1896.)

Appeal from judgment of the General Term of the Court of Common Pleas for the city and county of New York, entered upon an order made February 28, 1894, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John B. Gleason* for appellants. The apparent agency of W. J. H. Ballard, in the office of the defendants, did not cover the concealment from his principals of the actual parties interested in accounts, either by placing such accounts in his own name, or otherwise. (*Edwards* v. *Dooley*, 120 N. Y. 540; *Walsh* v. *H. F. Ins. Co.*, 73 N. Y. 5; *Argersinger* v. *Macnaughton*, 114 N. Y. 537; *Martin* v. *Farnsworth*, 49 N. Y. 558; *T. M. & I. Co.* v. *Peter*, 19 S. W. Rep. 860.) The presumption always is that the person in whose name an account stands is the party in interest, from whom instructions are to be taken. ( *Willard* v. *White*, 56 Hun, 581; *Davis* v. *Reynolds*, 5 Hun, 652.) When one of two innocent parties must suffer from the act of a third person, that party must sustain the loss who has enabled said third person to do the injury. (*Walsh* v. *H. F. Ins. Co.*, 73 N. Y. 5; *Mc Williams* v. *Mason*, 31 N. Y. 294; *Argersinger* v. *Macnaughton*, 114 N. Y. 540; *N. L. Ins. Co.* v. *Minch*, 53 N. Y. 150.) A principal is not chargeable with knowledge of an employee when not acting within the scope of his authority; nor is he

chargeable with the knowledge of an employee where he and such employee are acting adversely or dealing independently with each other as two parties — one against the other. (*N. L. Ins. Co.* v. *Minch*, 53 N. Y. 150 ; *Shipman* v. *Bank S. N. Y.*, 126 N. Y. 329 ; *L. F. Ins. Co.* v. *Bell*, 22 Barb. 54 ; *Innerarity* v. *M. Nat. Bank*, 139 Mass. 332.) The fact that certain of plaintiff's checks were drawn to the order of the defendants imputes no notice, and is distinctively negatived, in view of the fact that the defendants placed them to the credit of the Ballard account by the plaintiff's instructions. (*Munnerlyn* v. *A. Sav. Bank*, 88 Ga. 333.) Whatever may have been the plaintiff's position at the outset, the losses in question were possible only through his gross negligence and unbusinesslike conduct, and he cannot under such circumstances claim to recoup them from the plaintiffs. (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30 ; *Martin* v. *Farnsworth*, 49 N. Y. 558 ; *Durst* v. *Burton*, 47 N. Y. 167 ; *Allen* v. *Coit*, 6 Hill, 318.)

*William A. Abbott* for respondent. The principal is bound by the acts of his agent within the apparent scope of his authority where a third person has acted believing and having a right to believe that the agent was within his authority, and when such person would sustain loss if the acts of the agent were not considered those of the principal. (*Bickford* v. *Menier*, 107 N. Y. 490 ; *Walsh* v. *H. F. Ins. Co.*, 73 N. Y. 5.) The language of four of said checks delivered by plaintiff to Ballard, making the funds payable only on the order of the defendants, imposed upon them the duty of seeing that they were not, through their agency, improperly disbursed after they had received them. (*Sims* v. *U. S. T. Co.*, 103 N. Y. 472.)

BARTLETT, J. The plaintiff sues the defendants, who are stockbrokers doing business under the firm name of Henry Allen & Co., as his brokers, for an accounting including damages by reason of defendants' refusal to deliver one hundred shares of stock of the Tennessee Coal and Iron Company.

The important question presented by this appeal is whether, upon the facts as found, the defendants were acting as the brokers of the plaintiff during the period mentioned in the complaint, being from September 30th, 1891, to November 15th, 1892.

The learned referee found in favor of plaintiff on this question, and judgment on the accounting was entered against the defendants for $2,892.99. The General Term has affirmed the judgment.

In the view we take of this case it is unnecessary to go into the details of the accounting, as we think, upon the facts as found in plaintiff's favor, it is clear, as matter of law, that the defendants were not acting as the brokers of the plaintiff in the transactions involved in this litigation.

The facts found by the referee bearing upon this phase of the case are as follows, viz. :

The defendants did business as brokers at 31 New street, New York, and between September 30th, 1891, and October 1st, 1892, one W. J. H. Ballard was at their place of business, at usual business hours, ostensibly as a clerk of the defendants, receiving orders from customers, attending to their execution and reporting same, but was not in their direct employ, nor did he receive a salary from them, as he was employed as an assistant by Charles F. Palmeter, who was an employee of defendants.

There is no evidence that Ballard was accustomed to open accounts for customers of the defendants, or that he ever did, except one account in the name of " W. J. H. Ballard, A," and one account in the name of " C. F. Timpson," being the accounts in this case. For several years prior to the 30th day of September, 1891, the plaintiff had been intimately acquainted and on friendly terms with Ballard.

On the 30th day of September, 1891, Ballard solicited plaintiff to open an account with defendants in grain, and plaintiff instructed Ballard to open such an account, and paid into it as margin two checks to be placed to his credit, the first for $200, dated September 30th, 1891, payable to defend-

ants' order and the other for $100, dated October 2d, 1891, payable to the order of "Cash."

From time to time at the office of defendants plaintiff gave Ballard orders for purchase or sale of grain, and reports purporting to be of the execution of the orders were made by Ballard to plaintiff.

The grain account was opened by Ballard under the name of "W. J. H. Ballard, A." On or about the 31st day of December, 1891, the plaintiff instructed Ballard to have a stock speculation account opened with defendants for him under the name of "Ballard, A.," giving as a reason that he did not wish his own name to appear on the books as trading in stocks.

The plaintiff paid into this account as margins between December 31st, 1891, and February 17th, 1892, four checks aggregating $2,600; three of the checks were his own, payable to the order of Henry Allen & Co., and the other was the check of a third party, payable to plaintiff, and indorsed by him to defendants' order.

The plaintiff gave Ballard the orders in this account, and Ballard made reports to him. Ballard from time to time drew moneys from the "W. J. H. Ballard, A.," account, and they were charged against it by his direction, and the defendants in all instances observed and carried out the instructions of Ballard.

Neither of the defendants had personal knowledge that the stock account was not the account of Ballard, nor that the plaintiff had, or claimed to have, any interest therein until about the first of October, 1892.

Plaintiff from time to time requested Ballard to draw moneys for him, which he did, and the plaintiff, although frequently in the office of the defendants, never drew cash there except through Ballard; and, although plaintiff frequently met and conversed with the defendants during the continuance of the "W. J. H. Ballard, A.," account, he never gave any order to purchase or sell securities or any other order in relation to the account either to the defendants, or to any person in their office except through Ballard.

There is no evidence that any checks or drafts during the continuance of the " W. J. H. Ballard, A.," account were drawn by plaintiff on defendants, paid by them and charged to the account, the only evidence as to checks or drafts drawn upon the defendants by the plaintiff being that certain drafts or checks of that character were cashed by Ballard, or the defendants at Ballard's request, as a matter of accommodation to the plaintiff, and without reference to any account. Certain other checks were paid by defendants and charged to the " C. F. Timpson " account, which had been opened by Ballard in June, 1892.

There was a balance due plaintiff on this latter account of $381.17, for which amount with costs the defendants made an offer of judgment before answer served.

These facts fail to establish the contention of plaintiff that the defendants were acting as his brokers.

The fact that the checks given to Ballard were payable to the order of defendants does not, standing by itself, charge the defendants with notice that the Ballard account on their books was owned by plaintiff. As to the transactions in grain, even if Ballard acted as defendants' agent in soliciting that account in September, 1891, and should have caused it to be opened in plaintiff's name, the plaintiff, so far as the record discloses the facts, made no effort to ascertain if his instructions had been carried out, but left the entire management of the account to Ballard as to orders, sales and drawing money, although plaintiff was well acquainted with defendants and frequently in their office. Any loss in this account was due to his own negligence.

As to the stock transactions after December 31st, 1891, they were to be conducted in a secret manner; the plaintiff suggesting an account to be called " Ballard, A.," not knowing that Ballard had already opened a " W. J. H. Ballard, A.," account.

The stock transactions were conducted secretly between plaintiff and Ballard, so far as defendants were concerned, and it was not until about October 1st, 1892, when Ballard's dis-

honesty was discovered, that the plaintiff claimed to be dealing with the defendants as a regular customer.

The stock transactions embrace nearly the entire amount in controversy, and as to them Ballard was the agent of the plaintiff beyond all question, and that being so the fact of Ballard handing to the defendants the checks of plaintiff payable to their order, which he directed to be credited to his account, was a matter of no particular moment.

It is right here that this case is to be distinguished from *Sims* v. *United States Trust Co.* (103 N. Y. 475), cited by plaintiff. Dr. Sims drew a check payable to the trust company and instructed one Crowell to deposit it in the trust company to the credit of Dr. Sims. Crowell, in disregard of his instructions, took from defendant a certificate of deposit payable to himself as trustee for Dr. Sims and subsequently drew the money thereon and converted it to his own use. The trust company was held liable on the ground that the check simply imported ownership of the money by Dr. Sims, and it was bound to hold the money until he gave instructions as to paying it out.

In the case at bar the plaintiff instructed Ballard to deposit these checks in the "Ballard, A.," account, and while the secret account was not in the precise name that plaintiff suggested there is no pretense that Ballard was instructed to deposit the checks with defendants to plaintiff's order; the checks were used substantially in accordance with plaintiff's direction.

Giving the plaintiff the benefit of all that is to be fairly implied from Ballard's connection with the business of defendants it cannot be properly assumed that he was authorized to conduct the secret stock transactions of the plaintiff in his own name and in the manner he did.

A principal is bound by the acts of the agent only within his actual or apparent authority. (*Walsh* v. *Hartford F. Ins. Co.*, 73 N. Y. 5; *Edwards* v. *Dooley*, 120 N. Y. 540.)

We think, in view of the facts in this case, defendants are entitled to the protection of the ordinary presumption that

the person in whose name an account stands is the party in interest from whom instructions are to be taken.

Furthermore, if Ballard was acting in the stock transactions as the agent of plaintiff, then defendants are protected by the rule that when one of two innocent persons must suffer from the act of a third person he shall sustain the loss who has enabled the third party to do the injury. (*Mc Williams* v. *Mason*, 31 N. Y. 294; *Walsh* v. *Hartford Fire Ins. Co.*, 73 N. Y. 5; *Argersinger* v. *Macnaughton*, 114 N. Y. 540.)

We have not overlooked the findings as to outside transactions which, it is claimed, show that Ballard had greater authority as agent of the defendants than the latter are inclined to admit, but we do not see as they materially help the plaintiff's case in view of the express finding that there is no evidence that Ballard was accustomed to open accounts for customers or that he ever did in fact except the accounts "W. J. H. Ballard, A.," and "C. F. Timpson."

The judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.