[No. 8780. Department Two. January 4, 1911.]

HUGHES & COMPANY, *Appellant*, v. FRED FLINT *et al.*, *Respondents.*[1]

APPEAL—REVIEW—FINDINGS. Findings will not be reversed on appeal because of conflict in the testimony, or because the greater number of witnesses testified to the contrary.

BILLS AND NOTES—HOLDER IN DUE COURSE—PAYMENTS—APPLICATIONS—MECHANICS' LIENS. Where a check drawn in favor of a building contractor is marked "on contract" and the drawee had notice of the contract and had opened a separate account with the contractor thereon, the drawee on paying the check is not a holder in due course, under Rem. & Bal. Code, § 3443, and cannot apply the payment to other accounts of the contractor.

MECHANICS' LIENS—PAYMENT—APPLICATIONS. A materialman receiving a check from a contractor, with notice that it was payment on the building contract, is bound to apply it on the contractor's account for that building, and cannot divert part of the proceeds to other accounts and claim a lien against the building for the balance.

MECHANICS' LIENS—MATERIALMEN—PAYMENT—TENDER. In an action by a materialman to foreclose a mechanics' lien for a balance due from the contractor, a tender by the contractor "in full payment," which includes all that could be charged as a lien against the property, could have been accepted without prejudice, and accordingly relieves the owner from liability, although the tender was insufficient to discharge all claims against the contractor.

MECHANICS' LIENS—ATTORNEY'S FEES. It is not an abuse of discretion to deny attorney's fees in an action to foreclose a mechanics' lien, where tender was made of all sums that could be charged against the property.

Appeal from a judgment of the superior court for Spokane county, Hinkle, J., entered November 15, 1909, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action to foreclose a materialman's lien. Affirmed.

*J. D. Campbell* and *J. B. Campbell*, for appellant.

*Wakefield & Witherspoon*, for respondents.

[1]Reported in 112 Pac. 633.

CHADWICK, J.—Appellant, who is a dealer in plumbers' supplies, furnished respondent James Maxwell, a contractor, material and supplies for a building then in course of construction. The building belonged to the respondents Flint, and was known as the Flint job, and was so entered on the books of the appellant, it being the custom of appellant to keep such accounts separate and sell only with reference to the particular job. Maxwell had several accounts unpaid and overdue on the 20th day of September, 1908. On that day a check was drawn by respondent Fred Flint, payable to the order of Maxwell for the sum of $1,500. On the face of the check the words "on contract" were written. This check was endorsed by Maxwell and delivered to appellant, and of the whole sum but $317.67 was credited on the Flint job, the remainder being credited upon, or used to balance, other accounts. Again, on October 23, 1908, another check for the sum of $1,000 was drawn by Flint, payable to the order of Maxwell, and by him endorsed over to appellant. The words "on contract" were also written upon this check. The check was cashed by appellant, and $242.59 was credited upon the Flint job account, the remainder being applied to other and older accounts. Other credits were made upon the account, so that on the 29th day of January, 1909, the books of appellant showed the total debits on the Flint job to be $2,747.79, the total credits to be $1,079.58, leaving a balance due of $1,668.21, to secure which a lien was filed, and in due time this action was begun to foreclose the same.

Respondents, the Flints, answering appellant's complaint, set up the payments hereinbefore alluded to, and further that, on the 13th day of January, 1909, there was due Maxwell, the contractor, a balance of $1,022.80 on his contract, and that at the instance and request of Maxwell, they had caused a check to be drawn for that sum, payable to the order of appellant, which check had been tendered to appellant and refused by it. The trial judge found that the Flints were entitled to have the two first checks drawn by them credited

in full upon the Flint job account, and these, together with the sum of $52.06 for goods returned, being so credited, a balance would remain in favor of appellant in the sum of $195.73. Judgment was rendered against Maxwell for $195.73, and a provisional lien declared against the property of the Flints for a like sum, conditioned upon the payment of that amount into the registry of the court within two days after the rendition of the judgment. No costs or attorney's fees were allowed appellant.

Appellant attacks the findings of the court that Maxwell directed the entry of the checks to the credit of the Flint job account, the theory of appellant being that, in the absence of any specific direction to apply the proceeds of the checks to any particular account, it could, as in other cases, satisfy any account standing in the name of Maxwell. A right to apply payments, under the facts as we have detailed them, is the ultimate issue in this case. It is undoubtedly the rule, as is contended by appellant, that, if no direction is made by a debtor who owes several accounts, the creditor may apply a payment as he sees fit; and if there be no direction or specific application by the creditor, the law will apply it to the oldest account. *Frazer v. Miller*, 7 Wash. 521, 35 Pac. 427; *Kelso v. Russell*, 33 Wash. 474, 74 Pac. 561.

But to bring itself within this rule, appellant assumes that there was no direction on the part of Maxwell. It is true that appellant's witnesses testified, as to one check at least, that Maxwell assented to the application of the payment to any account appellant desired, but this is denied by Maxwell. The finding of the trial judge being thus sustained by competent testimony, we could not overrule it without doing violence to a rule so frequently announced by this court as to need no citation of authority; that is, that the findings of the trial judge, when sitting without a jury, will not be reversed because of a conflict in the testimony, or because the greater number of the witnesses have testified to the contrary. There is a personal equation in all trials which appellate courts can-

not measure, and verdicts and judgments would indeed be insecure should they attempt it. But the facts in this case are such that it clearly falls without the limit of the general rule. Appellant had notice of the Flint contract, and had so entered it on its books. The check drawn by Flint upon which the words "on contract" were written, when presented by the contractor, was sufficient to put appellant upon notice, and it could not, without notice to the owners, divert the payment and charge them with a lien for a like amount. Being so marked, the check was not received in due course. A holder in due course is a holder who has taken an instrument, complete and regular upon its face. Rem. & Bal. Code, § 3443.

Waiving the actual notice which the books of appellant import, the equities of the respondents Flint would still be paramount.

The rule is stated in 7 Cyc. 949:

"As a rule any irregularity, erasure, ambiguous or uncertain clause, or peculiarity connected with the paper, which is sufficient to excite suspicion or demand inquiry of a person exercising ordinary business prudence and judgment, will operate as constructive notice to a purchaser taking the same without inquiry."

In this respect the case falls within the rule of *Bowles Co. v. Clark*, 59 Wash. 336, 109 Pac. 812, where the proceeds of a check, drawn by the owner in favor of the supply house for the estimated cost of plumbing supplies, had been applied as follows: A part to cover the cost of supplies then furnished; a part to balance an older account, and the remainder in money paid to the contractor. The supply house furnished additional materials and filed a lien. It claimed to have received the check in due course. The fact that the check was drawn by a stranger to the supply house was held to be enough to show a property in the check in the drawer. The court there said:

"But we think it too much to say that these circumstances were of such a nature as to warrant the belief that the prop-

erty in the check was the property of Fraser [the contractor.] The check itself contained a distinct warning to the contrary. It was made payable to the respondent [the supply house], a stranger to the drawer, and not to Fraser, and it is not reasonable to suppose that Fraser would have accepted payment of an obligation due himself in a form which he could not use without the consent and co-operation of a third person."

In *Crane Co. v. Pacific Heat & Power Co.*, 36 Wash. 95, 78 Pac. 460, it was held that the answer of a surety, alleging that plaintiff had received and credited money paid on a particular contract, knowing its source, to other accounts, stated a defense; and further that, knowing the source of the payment, the materialman could not apply payments, under the general rule, to the prejudice of a surety on the contractor's bond. In principle that case is like unto this. The right to apply the payments to the older or other accounts was denied, because the lien claimant had notice that the money was paid on the contract which the surety company had underwritten.

The owner of land who lets a contract for the erection of a building upon it is an involuntary debtor, made so by the terms of a statute; and where he has made payment on his contract, and the amount thereof has passed to the materialman having notice of the contract, and the source of the payment, or the payment being made by check bearing words which import an equity in the drawer so as to exempt it from the provisions of the negotiable instruments act, equity and fair dealing demand that the owner should not be made to pay his debt over again. The appellant in this case has lost nothing through the conduct of the respondents Flint, and they are entitled to a just credit for the money paid by them on their contract with Maxwell.

It is now insisted that, if the payments should be credited to the Flint job account, nevertheless appellant should have judgment for the $1,022.80 tendered by Maxwell, because the check was tendered "in full payment" of the Flint job, and for that reason they were not bound to accept it. The Flints

were liable for $195.73, and no more, and as the greater sum included the less, appellants might have accepted the check without prejudice to their rights. The tender did not create a right of action or alter the relations of the parties. Nor could the court have entered, as we are now asked to do, a judgment against Maxwell for a greater sum than was due on the Flint job, that being the subject-matter of the present action, and no issue having been tendered on his personal or general accounts with appellant.

The court denied an attorney's fee, and this too is alleged as error. Under the facts, the trial judge did not abuse his discretion in this respect. Respondents should not be penalized in costs or attorney's fees after tendering all that could be charged against their property.

Judgment affirmed.

RUDKIN, C. J., CROW, MORRIS, and DUNBAR, JJ., concur.