A. H. BJORGO and Another v. FIRST NATIONAL BANK OF
EMMONS and Another.[1]

October 9, 1914.

Nos. 18,625—(162).

**Adverse rulings not reviewable on appeal, when.**
    1. A party whose motion for new trial has been granted is not aggrieved by the order so that the rulings adverse to him on the trial may be reviewed on his cross-appeal.

**Notice of appeal.**
    2. The notice of plaintiffs' appeal from the order granting their motion for a new trial does not in terms embrace an appeal from the court's orders on the demurrers interposed; even if such orders were appealable.

**Bank draft — payee put on inquiry.**
    3. The fact that a bank draft issued by a small village bank was made

[1] Reported in 149 N. W. 3.

payable to the order of the defendant bank, is *held* sufficient to put the defendant bank on inquiry as to the ownership of the proceeds before paying the same to the person presenting the draft.

Action in the district court for Freeborn county to recover $600. The case was tried before Kingsley, J., who sustained the demurrer of defendant Rasmussen to the complaint and overruled the demurrer of plaintiffs to the separate answer of defendant bank, and dismissed the case on the merits when the plaintiffs rested. From the order granting plaintiffs' motion for a new trial on the sole ground that it was a question for the jury whether the draft mentioned in the opinion was so drawn that on presentation to the payee it was sufficient to put the payee upon notice as to the character of the transaction between plaintiffs and Mr. Haugan, which notice, upon inquiry, would have led to knowledge that Mr. Haugan was not entitled to the proceeds of the draft, defendants appealed. From the same order refusing to grant a new trial upon any other grounds set out in plaintiffs' motion, plaintiffs appealed. Affirmed on both appeals.

*T. A. Kingland* and *Mayland & Peterson,* for plaintiffs.
*Henry A. Morgan* and *John F. D. Meighen,* for defendants.

HOLT, J.

The plaintiffs allege, in substance, that on or about February 21, 1911, one B. B. Haugan was soliciting subscriptions for stock in a corporation then organized by him and two other persons; that Haugan represented to plaintiffs that the corporation had an option on certain lands in Texas; that until the corporation should procure title to these lands the money paid for subscriptions to stock should be deposited in the defendant bank; that the bank and its cashier, the defendant Rasmussen, on February 25, 1911, knew of these representations and that subscriptions were thus obtained and money paid thereon conditionally; that on last named date plaintiffs subscribed for 20 shares of stock in the corporation, and about said date deposited in the defendant bank $600 by draft drawn to the order of and delivered to the bank, as a deposit to pay for said shares of stock when the corporation should obtain title to the Texas lands

which was to be acquired on June 1, 1911; that said Haugan and one of the other two incorporators and officers of the corporation absconded about March 1, 1911; that the title to said land has never been acquired by the corporation and the option has expired, and that plaintiffs' demand for payment of the $600 has been refused. The defendant Rasmussen demurred, and the demurrer was, by a verbal order, sustained at the time the case was reached for trial, but before the introduction of any testimony. In its answer the bank admits the demand for the money, and alleges that B. B. Haugan presented at its banking house in the usual course of business a six hundred dollar draft, being the draft referred to in the complaint, drawn upon the Commercial National Bank of Chicago by the Kensett Bank of Iowa, dated February 25, 1911, and payable to the order of the defendant bank, and that, at the request of Haugan, in good faith without knowledge or notice that plaintiffs, or either of them, claimed any interest in the draft or the proceeds, the defendant bank paid the full sum of $600 to Haugan. Other allegations of the complaint were denied. Plaintiffs interposed a demurrer to the answer, which was overruled by a verbal order at the same time that the demurrer of the defendant Rasmussen was submitted. The evidence of the alleged agreement between plaintiffs and Haugan as to how the proceeds of the draft should be disposed of having been excluded, in the absence of any proof that the bank had any knowledge thereof, and the form of the draft not being deemed sufficient notice to charge the bank with negligence in following Haugan's directions in paying the money, the court dismissed the case on the merits. Thereafter plaintiffs moved for a new trial alleging various errors, among others the rulings of the demurrers. The court granted a new trial upon the sole ground that it was for the jury to say whether the fact that the draft was made payable to the defendant bank was sufficient to put the bank "upon notice as to the character of the transaction between the plaintiffs and Mr. Haugan * * * which notice upon inquiry would have led to knowledge that Mr. Haugan was not entitled to the proceeds of said draft." Both parties appeal.

There is nothing to plaintiffs' appeal. It is clear that having ob-

tained what they asked, a new trial, they are not aggrieved. If the record shows errors which necessitate a new trial, the order will stand, although the error assigned as the sole ground by the court for its action should be no error at all. The order overruling plaintiffs' demurrer to the bank's answer is not appealable, even if it could be said to be embraced within the scope of the notice of appeal. But we do not think their notice is so framed that the rulings on either demurrer are properly before us. When the defendant Rasmussen's demurrer was sustained, he dropped out as a party, so that the subsequent trial, dismissal and order granting a new trial, did not affect him. Therefore the only question for review relates to the correctness of the order granting a new trial, challenged by the appeal of the bank.

The contention of plaintiffs that the order is, as to the bank, not appealable, is not sound, for the order expressly states that it was granted exclusively upon an error occurring at the trial and is thus within the terms of the statute. Section 8001, subd. 4, G. S. 1913.

We come then to the question whether the dismissal on the merits was error. The basis of plaintiffs' cause of action is perhaps somewhat obscure. It is alleged that the money paid for stock subscriptions should be deposited in the defendant bank, but there is no allegation that it was the money of the several subscribers. The reasonable inference is rather that it belonged to the corporation, but was to remain in the bank until the title of certain land was acquired by it. Nor is it alleged that plaintiffs' subscription was conditional. The gist of the allegations is that plaintiffs made a special deposit with the bank of $600, which was to pay for the shares of stock purchased by them when the corporation acquired the land mentioned. This, however, is not deemed material, under the view taken by the majority of the court, for the defendant bank admits collecting the draft and cashing it, or paying the proceeds to Haugan who presented the same. The question is, was there sufficient evidence in the fact that the draft was payable to the order of the defendant bank to put the bank on inquiry as to the ownership or disposition of the proceeds, so that it justified a submission of the bank's liability to the jury when plaintiffs rested? Nothing appeared on the face of the draft disclos-

ing plaintiffs' interest. And, in that, the case at bar differs from Bristol Knife Co. v. First Nat. Bank, 41 Conn. 421, 19 Am. Rep. 517, and Sims v. U. S. Trust Co. 103 N. Y. 472, 9 N. E. 605, relied on by plaintiffs, where checks made payable to the bank (held liable) indicated who was the owner of the funds. We, however, think the fact that the draft being payable to the bank, instead of to Haugan, who presented it and claimed ownership, was so out of the ordinary mode of doing business, if Haugan was entitled to the proceeds, that it placed a duty upon the bank to take some precautions before paying out the money. It is therefore considered that the court erred when dismissing the case on the merits and properly granted a new trial.

The writer would concur in this disposition of the appeal were it not for these facts appearing: Plaintiffs pleaded a special deposit, they intrusted Haugan to make it for them without disclosing, on the face of the draft or otherwise, their identity or ownership of the funds; the cashier of this bank knew Haugan, knew that he was taking subscriptions for shares of stock and receiving payment, having himself bought and paid Haugan for stock a few days before; there was not the slightest proof, or offer of proof, that, had the defendant bank communicated with the drawer bank, any information could have been obtained as to plaintiffs' ownership, or alleged agreement with Haugan; and furthermore, the plaintiff Bjorgo testified that Haugan bought the draft from the bank, paying therefor to the extent of $300 with the personal check of Bjorgo executed and delivered to Haugan in payment of his part of the stock subscription. It seems to me, taking the whole evidence as it stood when the court dismissed the case, it did not justify a recovery. Plaintiffs had chosen Haugan to do their business with the bank without disclosing themselves; the bank was in a measure justified in acting on his directions; it undoubtedly paid out the money in good faith, believing Haugan owned it or had authority to obtain the same, and, I think, the rule "that, where one of two innocent persons must suffer from the act of a third person, he shall sustain the loss who had enabled the third party to do the injury" should protect the bank here, the same as in the very similar case of Timpson v. Allen, 149 N. Y. 513, 44 N. E. 171, where the rule was stated as above and applied.

On both appeals the order of the court is affirmed.