[Sac. No. 4619. In Bank.—April 1, 1932.]

PACIFIC FINANCE CORPORATION (a Corporation), Appellant, v. BANK OF YOLO (a Corporation), Respondent.

G. J. Irwin and Samuel B. Russell for Appellant.

Gaddis & McDonald for Respondent.

PRESTON, J.—This cause arises out of two so-called "flooring" transactions between plaintiff finance corporation and one J. T. Hendley, an automobile dealer at Woodland. Defendant was drawn into the transactions by cashing two drafts and crediting to the account of Hendley the proceeds thereof. Both drafts were drawn by plaintiff's Sacramento office upon its Los Angeles office, the first on February 2, 1928, for $4,610, the second on March 5, 1928, for $2,323.51; both were made payable to defendant bank and both contained in the body thereof the following recital: "In payment Sight Draft Automobiles Purchased for Account of J. T. Hendley."

A series of transactions, differing in only one respect from the two above noted, had been theretofore had between the parties. The system usually employed by them may be briefly described as follows: Vendors or distributors of automobiles shipped to Woodland carloads of automobiles and at the same time sent to a bank there a bill of lading to its own order, invoice and sight draft covering the amount of the shipment, with instructions to notify Hendley. Upon receiving notice of the arrival of the goods Hendley would call upon plaintiff at its Sacramento office. Plaintiff would then prepare conditional sales contracts, naming itself as the vendor of the cars and Hendley as vendee and providing for payment by installments of the purchase price thereof. Hendley was also required to make a small cash payment from his own funds on account of the said purchase price. Plaintiff's agent would then go in person to the bank at Woodland, to which had been sent the said bill of lading and accompanying documents, and in return for the documents, would pay for the shipment. In other words, plaintiff meticulously followed a system designed to vest in it directly from the shipper the title to the goods, the object of this conduct being to prevent the claim that it held them merely as security. The procedure so followed and its effect have been approved by the appellate courts of this state in the cases of *Mohr* v. *First Nat. Bank of Hanford,* 69 Cal. App. 756 [232 Pac. 748], and *Pacific Finance Co.* v. *Hendley,* 103 Cal. App. 335 [284 Pac. 736].

In the two transactions here under review, the customary procedure was again attempted with the variation that in-

stead of accompanying Hendley to Woodland to pay for the shipments, plaintiff made its drafts payable to defendant bank and entrusted the delivery of them to Hendley, thus making him its agent for this limited purpose. As above noted, the drafts bore on their face directions to defendant as to the disposition of the proceeds thereof. Hendley, however, recreant to his trust, instead of delivering the drafts personally to the bank, took them to his office, indorsed them as though he were the payee and forwarded them with deposit slips to defendant, who thereupon passed the proceeds thereof in each case to his account and he, in turn, appropriated the entire amount to his own use. Plaintiff received nothing for its outlays except the sum of $1315 representing the first payments made to it by Hendley and small subsequent payments. In the transaction of February 2d, there was in fact no bill of lading or other document at defendant bank. A shipment, and the documents covering it, had arrived but Hendley had secured another finance company to "floor" it for him, thus again demonstrating his bad faith. In the transaction of March 5th, the bill of lading and other documents were actually at defendant bank and, while holding them, it paid the proceeds of the draft of plaintiff, of which it was the payee, into the account of Hendley, ignoring altogether the purpose for which the draft had been drawn as noted on the face thereof. The bill of lading and other documents were returned to the shipper and for this outlay plaintiff likewise received nothing.

For the conversion by defendant of these drafts, plaintiff instituted this action. Issue was joined and the trial resulted in the making of findings and judgment in favor of defendant. Plaintiff appealed. The court, in elaborate findings, declares that the transactions were loans by plaintiff to Hendley; that Hendley owned each of the drafts absolutely and was entitled to the entire proceeds; that he had the right to negotiate them to defendant bank or any other persons and that in buying them from Hendley, defendant bank assumed no risk whatever and, therefore, may not be held liable in any amount.

But, in our judgment, under the undisputed facts, these findings are without support. Appellant contends that the transactions were plainly ones where plaintiff took title from the shipper direct; hence they were conditional sales and

in no sense loans. Respondent's position is in accord with the findings of the court above noted. Appellant, however, further urges that whether the transactions be classed as loans or whether they be classed as conditional sales, the conclusion of the court below is nevertheless erroneous. This latter position seems to us to be entirely sound and logical for under the facts of this case even if the drafts had been made directly payable to Hendley but with the condition attached that he must, before the loans took effect, apply the proceeds thereof to bringing into being the security to be pledged, he would in each case have been guilty of a breach of trust in the violation of such agreement. But here we have drafts which were intended for specific purposes and it was not within the power of Hendley to authorize defendant to divert the proceeds into altogether unauthorized channels. In other words, were the transactions conceded to have been loans, such loans were not complete until the security was created for them and the existence of that security was a prerequisite to their taking effect.

In *Sims* v. *United States Trust Co.*, 103 N. Y. 472 [9 N. E. 605, 606], we have a case somewhat similar in fact and identical in principle with the case before us. There one Sims delivered to Crowell his $5,000 check drawn on the People's Bank and made payable to defendant trust company, with verbal instructions to deposit it to his credit with defendant. Instead of so doing, Crowell delivered the check to defendant and requested and received from it a certificate of deposit payable to himself as trustee for Sims; shortly thereafter he drew the money thereon and converted it to his own use. The main question was whether defendant had authority to make the said payment to Crowell. The court said: "The check upon its face imported the ownership of the moneys represented in it by Dr. Sims, and his desire that its custody should be transferred from the People's Bank to the defendant. This certainly did not warrant the defendant in supposing that Dr. Sims thereby intended to pay $5,000 to Crowell, or place him for any purpose in possession of the fund. If he had so intended, the check would have been made payable to Crowell's order, and there would have been no need of the agency of the defendant in the transaction. The use of the defendant's name as payee of the check indicated the drawer's intention to lodge the moneys in its

custody and place them under its control, and nothing further than this was inferable from the language of the check.

The court there further said: "The defendant could have refused to receive the deposit, or act as Dr. Sims' agent in transferring the funds from one custodian to another; but having accepted the office of so doing, it was bound to keep Dr. Sims' moneys, until it received his directions to pay them out. The language of the check making the funds payable only upon the order of the defendant imposed upon it the duty of seeing that they were not, through its agency, improperly disbursed after it had received them. They could not safely pay out such funds except under the direction of their lawful owner." To the same effect are the following cases: *Apostoloff* v. *Levy*, 186 App. Div. (N. Y.) 767 [174 N. Y. Supp. 828]; *Bjorgo* v. *First Nat. Bank*, 127 Minn. 105 [L. R. A. 1915B, 287, 149 N. W. 3]; *Bowles Co.* v. *Fraser*, 159 Wash. 336 [31 L. R. A. (N. S.) 613, 109 Pac. 812].

Respondent, in justification of the action of the court below, relies chiefly upon the case of *Bank of Venice* v. *Clapp*, 17 Cal. App. 657 [121 Pac. 298]. But to our view this case does not present a parallel situation. There the defendant had made an unconditional promise to loan to one Widrig a certain sum of money and he issued his checks therefor on one bank, but, instead of making them payable to Widrig, he made them payable to another bank which had a claim against Widrig. This payee bank accepted the checks and applied their proceeds to the obligation of Widrig to it. This it could legally do as Widrig had an unconditional right to the checks or their proceeds. But in the instant case Hendley had no such right to the drafts or their proceeds. He had only a limited agency to deliver the drafts to the payee named therein, who was duty bound to use the proceeds as directed; delivery thereof to Hendley was not the equivalent of performance of such duty. If Hendley, with the consent of defendant bank, had himself used the drafts and their proceeds to pay for the cars and plaintiff was suing the defendant because of its connivance in the transaction, then the defense that the funds went where they were intended to go would lie in favor of defendant. In such a case we would be able to apply a principle similar to that found in the Bank of Venice case, *supra.* Moreover,

the latter case recognizes that the situation there presented was an exception to the general rule and in effect it indorses the holding here announced by stating that no question of agency was there involved and by using the following language: "*Sims* v. *Trust Co.,* 103 N. Y. 472 [9 N. E. 605], is an authority to the effect that where checks upon one bank payable to another are delivered to a third person, the use of the payee's name indicates the drawer's intention to lodge the money in the payee's control, and nothing further is inferable from the language of the check. This may be accepted as the rule in the absence of any other agreement, but where checks are delivered to a third person under an agreement of the character disclosed by this record, the agreement, and not the inference, must control.

These views require a reversal of the judgment of the court below and it is so ordered.

Seawell, J., Shenk, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.