[Sac. No. 4626. In Bank.—February 24, 1933.]

THE MODESTO LUMBER COMPANY (a Corporation) et al., Plaintiffs, Cross-Defendants and Respondents; V. L. BATES et al., Plaintiffs and Cross-Defendants; MODESTO BUILDING AND LOAN ASSOCIATION (a Corporation), Appellant, v. LEWIS D. WYLDE et al., Defendants, Cross-Complainants and Appellants.

422

Dennett & Zion, G. B. Hjelm and Harold L. Hjelm for Appellants.

J. M. Walthall for Respondents.

PRESTON, J.—Plaintiff corporations, The Modesto Lumber Company and Turner Hardware & Implement Company, furnished materials to V. L. Bates, a contractor, which materials were used by him in erecting a residence and garage upon the Modesto property of defendants Wylde and wife. The Modesto Building and Loan Association furnished by way of a loan to the owners, the funds necessary to erect said structures and agreed to disburse said funds in such a manner as to protect itself and them. This association had knowledge of the unrecorded but written building contract between said owners and said contractor and

said contractor had knowledge of the terms of the loan. The loan and the contract price were identical—the sum of $3,575. The owners received no money directly from the loan association and hence paid none of the bills for materials or labor and paid nothing to the contractor on account of his services. The materialmen asserted that they had not been paid in full for the materials furnished by them for building the structures and accordingly they filed claims of lien for the balances due them, as follows: The Modesto Lumber Company, $504.12; Turner Hardware & Implement Co., $401.72. Thereafter they instituted the present action for the purpose of having their respective claims declared valid and impressed as liens upon the property and for a foreclosure and sale in satisfaction thereof. They made said owners of the property, said contractor and said loan association defendants. The relief asked against the contractor was a personal judgment and the relief asked against the loan association was that their liens be declared prior to the trust deed lien held by it upon the property.

The owners, Wylde and wife, answered the complaint, pleaded payment of the respective claims of plaintiffs and at the same time they filed a cross-complaint making the loan association also a cross-defendant. In this behalf they alleged that the proceeds of said loan were accepted in trust by the loan association for the purpose of discharging all claims incident to construction of said buildings and further that the loan association agreed to protect them against default on the part of said contractor in the payment of labor and materials furnished and used in said construction; that the loan association guaranteed that no claims would become a lien upon the property; furthermore, that defendant Bates, the contractor, was not to be paid until all claims for labor and material had first been satisfied. They further alleged that whatever sums were declared a lien on their property would result in damages to them for which the loan association would be liable and they prayed for relief accordingly.

The issues tendered by the cross-complaint were traversed by the cross-defendants and the cause thereafter proceeded to trial. The court made findings and gave judgment upholding *in toto* the respective claims of plaintiffs and in turn passed said amounts on as a personal judgment in

favor of the owners and against the loan association. In other words, plaintiffs had plenary relief, both by personal judgment against the contractor and by establishment of their claims of lien and the owners, defendants Wylde and wife, were likewise granted the incidental relief of a personal judgment against the loan association. Both the loan association and defendants Wylde and wife have appealed from said judgment.

The record presents but one serious question of law applicable to both plaintiffs and arising from the following facts. The contractor Bates had with each of the plaintiffs a general account and also special accounts identified by the ownership of the properties upon which buildings were being constructed by him. Accordingly, Bates was indebted to each of the plaintiffs in various capacities. On the twenty-first day of October, 1929, the loan association caused to be made out a check for $400 payable to The Modesto Lumber Company, and entrusted its delivery to said Bates, with instructions that it should be applied on account of the materials furnished for the construction of the buildings here in question on the property of Wylde and wife. Contrary to these instructions, Bates delivered the check with directions that it be applied on the payment of his personal account with the lumber company; he did not ask, as he was in honor bound to do, that it be applied upon the Wylde building account. About the same time also, and in the identical way, checks were made out by the loan association in favor of Turner Hardware Company, one for $200 and one for $225 and likewise entrusted to Bates for delivery with instructions to have these sums credited to the Wylde building account. In violation of his trust in this particular, also, the said Bates requested the Turner company to apply the proceeds of said checks on his personal account and did not mention the Wylde building account.

In other words, the situation is reduced to this: If the $400 check were applied to the indebtedness claimed by the lumber company, there would remain due on said indebtedness only the sum of $104.12 and if the other two checks referred to were applied on the claims of the Turner company, they would more than discharge that indebtedness in full. So the real controversy presented by this appeal

is: Was it the duty of the lumber company as to the $400 check and of the Turner company as to the other two checks, to apply the proceeds thereof on the Wylde account instead of on the personal account of Bates. This brings to the foreground an interesting question of law that has not been thoroughly settled in this jurisdiction although it has received extended consideration elsewhere.

■ The majority rule seems to be that where the materialman is furnishing at the same time materials to a contractor for the construction of buildings upon the property of different owners, the materialman may, in the absence of notice of the source of the funds, accept the same from the contractor and apply them upon any agreed account or as specified by law, even if in such case it develops that the contractor has violated his trust while using the funds of A to pay for materials used on the property of B. (See note, Ann. Cas. 1917C, p. 588; note, L. R. A. 1916D, p. 1259.) But it seems equally clear that where the materialman does have knowledge of the source and ownership of the funds delivered to him by the contractor, he may not apply them on the account of any other than the true owner, even though the contractor may have consented to their application elsewhere. See authorities just cited and also *Hanson* v. *Cordano*, 96 Cal. 441 [31 Pac. 457]. The concurring opinion of Mr. Justice McKee in the case of *Goss* v. *Strelitz*, 54 Cal. 640, 644, asserts a doctrine as against the materialman even stronger than the above rule.

■ But in the case before us we have a situation somewhat different from either the general rule or the exception thereto above noted. Here the materialman had notice that the loan association was financing more than one building and it knew, of course, that the contractor Bates was also constructing more than one structure being so financed. With this knowledge, and with a check payable directly to it and not to the contractor, how could the materialman escape the duty of inquiring of the loan association as to the application of the funds? The check not being made to the contractor was notice to the materialman that the contractor was without authority to determine finally the application of the funds. The agency conferred upon the contractor by entrusting the check to him was merely that of a messenger.

In the case of *Pacific Finance Corp.* v. *Bank of Yolo,* 215 Cal. 357 [10 Pac. (2d) 68, 70], a finance corporation entrusted to a party with whom it was dealing a check payable to defendant bank. The bank allowed the messenger to open a private account and receive the proceeds of the check to his credit. The funds were thus lost to the maker of the check. The bank was held liable and we there approved the doctrine of *Sims* v. *United States Trust Co.,* 103 N. Y. 472 [9 N. E. 605], as follows:

"One Sims delivered to Crowell his $5,000 check drawn on the People's Bank and made payable to defendant trust company, with verbal instructions to deposit it to his credit with defendant. Instead of so doing, Crowell delivered the check to defendant and requested and received from it a certificate of deposit payable to himself as trustee for Sims; shortly thereafter he drew the money thereon and converted it to his own use. The main question was whether defendant had authority to make the said payment to Crowell. The court said: 'The check upon its face imported the ownership of the moneys represented in it by Dr. Sims, and his desire that its custody should be transferred from the People's Bank to the defendant. This certainly did not warrant the defendant in supposing that Dr. Sims thereby intended to pay $5,000 to Crowell, or place him for any purpose in possession of the fund. If he had so intended, the check would have been made payable to Crowell's order, and there would have been no need of the agency of the defendant in the transaction. The use of the defendant's name as payee of the check indicated the drawer's intention to lodge the moneys in its custody and place them under its control, and nothing further than this was inferable from the language of the check.'

"The court there further said: 'The defendant could have refused to receive the deposit, or act as Dr. Sims' agent in transferring the funds from one custodian to another; but having accepted the office of so doing, it was bound to keep Dr. Sims' moneys, until it received his directions to pay them out. The language of the check making the funds payable only upon the order of the defendant imposed upon it the duty of seeing that they were not, through its agency, improperly disbursed after it had received them. They could not safely pay out such funds except under the direc-

tion of their lawful owner.' To the same effect are the following cases: *Apostoloff* v. *Levy*, 186 App. Div. 767 [174 N. Y. Supp. 828]; *Bjorgo* v. *First Nat. Bank*, 127 Minn. 105 [149 N. W. 3, L. R. A. 1915B, 287]; *Bowles Co.* v. *Clark*, 59 Wash. 336 [109 Pac. 812, 31 L. R. A. (N. S.) 613]."

We likewise find a situation quite similar in principle to the case before us in *Petersen* v. *Shain et al.*, 4 Cal. Unrep. 122, 125 [33 Pac. 1086]. There Shain, a contractor, sublet to Petersen & Co., as subcontractors, a portion of the construction work of a building. Mooser, a materialman, furnished materials to Petersen & Co., used on this building, and at the same time had other accounts with Petersen & Co. for similar work at other places. Shain, as part of his settlement with Petersen & Co., for the work done, made two checks payable to that company but delivered them, not indorsed, to Mooser, who in turn procured their indorsement by Petersen & Co., and cashed them, applying the proceeds to other accounts than those in which Shain was interested. It was held that Mooser could not do this to the prejudice of Shain and that in law said proceeds were to be credited to the Petersen job in which Shain was interested.

In the case of *Bowles Co.* v. *Clark*, 59 Wash. 336 [109 Pac. 812, 31 L. R. A. (N. S.) 613], we have almost an exact parallel to the case before us. There the proceeds of a check drawn by the owner in favor of the supply house for the estimated cost of plumbing supplies was by the payee applied as follows: a part to cover the cost of supplies already furnished, a part to balance an older account against the contractor and the remainder of the money was paid to the contractor himself. The supply house later furnished additional materials and filed a lien. It claimed to have received the check in due course. The fact that the check was drawn by a stranger to the supply house was held to be enough to show a property in the check in the drawer. The court there said: "But we think it too much to say that these circumstances were of such a nature as to warrant the belief that the property in the check was the property of Fraser (the contractor). The check itself contained a distinct warning to the contrary. It was made payable to the respondent (the supply house), a stranger to the drawer, and not to Fraser, and it is not reasonable to suppose that

Fraser would have accepted payment of an obligation due himself in a form which he could not use without the consent and co-operation of a third person.'' The above ruling was expressly approved in *Hughes & Co.* v. *Flint,* 61 Wash. 460 [112 Pac. 633, 634].

It follows that plaintiffs, as materialmen here, were required to credit the respective checks received by them to the Wylde building account. When so applied the claim of the hardware company is discharged in full; but $104.12 is left due the lumber company, for which its lien is valid. As for the liability of the loan association to the owners for the amount due the materialmen, we think the evidence sufficient to show that the loan association accepted a trusteeship to disburse these funds first to the laborers and materialmen and the balance to the contractor. It. fairly appears that the loan association paid sums direct to the contractor that, if used to pay for materials would more than offset the small balance now found due the lumber company. We are not disposed to disturb the court's findings in this behalf.

The judgment is modified by striking therefrom all relief as to plaintiff, Turner Hardware & Implement Company, a corporation; the claim of The Modesto Lumber Company, a corporation, is reduced from $504.12 to $104.12. The judgment against Modesto Building and Loan Association, a corporation, is likewise correspondingly reduced to said amount, $104.12. As so modified the judgment is affirmed, appellants Wylde and wife to recover costs against respondents and, under the remaining aspects of the appeal, neither party to recover costs.

Curtis, J., Seawell, J., Shenk, J., Tyler, J., *pro tem.,* and Waste, C. J., concurred.