[Civ. No. 22471. Second Dist., Div. Three. Feb. 28, 1958.]

WESTWOOD BUILDING MATERIALS COMPANY (a Corporation), Appellant, v. EDWARD L. VALDEZ et al., Defendants; IRVING M. LITZ, Respondent.

George W. Burch, Jr., for Appellant.

Glen Behymer as Amicus Curiae on behalf of Appellant.

Alfred R. Meyers for Respondent.

PATROSSO, J. pro tem.*—This is an appeal by plaintiff from a judgment in favor of the defendant Litz in an action to foreclose a mechanic's lien.

There is no dispute with respect to the facts. Defendant Litz, respondent here, as owner entered into a contract with Pelton and Zahler, whereby the latter agreed to construct 21 houses upon a tract owned by respondent. The general contractors in turn entered into a subcontract with defendant Valdez under which the latter agreed to furnish the labor and material necessary to perform all of the plastering and stucco work required under the general contract. Plaintiff, pursuant to an oral contract with Valdez under which the latter agreed to pay for the same by the 10th of the following month, furnished materials required by the subcontractor in the performance of his contract of the reasonable value of $10,637.55. Claiming a balance due thereon of $5,268.49, plaintiff filed a claim of mechanic's lien therefor and instituted this action to enforce the same.

During the course of the performance of the work, respondent paid to Valdez the total sum of $21,500 in full payment of all sums due under his subcontract. Such payment was made by the medium of eight checks of the respondent, the first four being made payable to Valdez alone and the last four being made payable jointly to Valdez and the appellant. The last four checks were in the sums of $2,500, $2,800, $2,000 and $5,580 respectively, and were delivered to Valdez who in turn delivered them to the appellant. The first three of these checks were endorsed by the appellant and by it returned to Valdez who endorsed and obtained payment thereon, no portion thereof being received by the appellant. The check for $5,580 was endorsed by Valdez and delivered to appellant which received payment thereof and in turn issued its check to Valdez for $580, the balance of $5,000 being credited by appellant to Valdez's account. These joint checks bore no endorsement or notation thereon to the effect that the proceeds thereof, insofar as necessary, were to be applied by appellant in payment of Valdez's indebtedness to it, and aside from the fact that the checks were payable jointly to Valdez and appellant, respondent did not communicate to appellant his intention with respect to the application of the proceeds thereof.

The trial court found that respondent paid to appellant a sum in excess of $10,637.55, the total value of materials fur-

*Assigned by Chairman of Judicial Council.

nished by appellant; denied appellant a lien, and ordered judgment in favor of appellant against Valdez in the sum of $5,268.49. The sole question presented is whether the issuance of the four checks in question made payable jointly to Valdez and appellant operated to discharge respondent's liability to appellant or to bar appellant's right to claim a lien upon respondent's property.

Appellant concedes that if respondent had made plain his intention that the proceeds of the checks were to be first applied to the satisfaction of Valdez's obligation for the materials furnished by appellant and used upon respondent's property, the appellant would have been under the duty to so apply such proceeds. Appellant insists, however, that in the absence of an express direction or notation to this effect upon the face of the checks or by a covering letter so stating, appellant was at liberty to apply the proceeds of the checks in such manner as it and its copayee might agree. We do not agree. However, we see no necessity for extended discussion as all of the appellant's arguments are effectively answered in the two California cases now to be noted.

In *Edwards* v. *Curry* (1957) (hearing by Supreme Court denied), 152 Cal.App.2d 726 [313 P.2d 613], plaintiff Edwards was a roofing subcontractor on a school job for the defendant Curry, the general contractor. Cross-defendant Schirm Company was the material dealer supplying Edwards. At the request of Schirm defendant made all payments due Edwards under his subcontract, payable to Schirm and Edwards jointly. These checks as issued from time to time were endorsed by the payees and deposited in Schirm's bank account and a portion of one check was credited to an account of Edwards for material furnished on another job. Also pursuant to an agreement between the payee and unknown to Curry, a portion of the proceeds of these checks was by Schirm returned to Edwards for the payment of labor employed by him and for his living expenses. The joint checks would have fully paid the bill for materials furnished on the school job if Schirm had not returned a portion of the proceeds thereof to Edwards for other purposes. After the completion of the job Schirm filed a stop notice with the school district alleging that $5,109.95 of its account with Edwards had not been paid and by reason thereof the district retained this amount under its contract with Curry. In the litigation which ensued, Curry filed a cross-complaint in declaratory relief asking, among other things, that it be adjudged that he was not indebted to Schirm

and that Schirm was not entitled to the amount withheld by the school district. The trial court held that as between Curry and Schirm the latter had been paid in full for material furnished to Curry on the school job and that Curry was entitled to a release of the stop notice, or upon Schirm's failure to release the notice that Curry have judgment against Schirm for the amount withheld by virtue of the notice. In affirming the judgment and answering contentions similar to those advanced by the appellant here, the court said (page 730) :

"It is Schirm Company's contention that under section 1192.1 et seq. of the Code of Civil Procedure the general contractor, Curry, is liable to it for materials furnished Edwards which went into the school building; that Curry must have known that the checks made payable to Schirm and Edwards jointly were not intended to be solely applied to the payment of Schirm's bill; and that the laborers must be paid from these payments; that since Curry consented to this joint check arrangement he impliedly agreed to whatever application of the funds was made by Edwards and Schirm, and the fund due from the school district to Curry is liable for the unpaid material bill of Edwards and Schirm, citing *Modesto Lbr. Co.* v. *Wylde,* 217 Cal. 421 [19 P.2d 238] ; and *Hollywood Wholesale Elec. Co.* v. *John Baskin, Inc.,* 121 Cal.App.2d 415 [263 P.2d 665]. In the Modesto case the check was made payable solely to the materialman. The court held that the contractor's orders to apply the funds to accounts other than the one intended was (sic) without authority. In the instant case Schirm Company claims a check made payable jointly to the subcontractor and the materialman would not operate as a payment of the account of the materialman.

"From the findings and judgment roll it would be reasonable for Curry and the court to believe that the materialman was interested in seeking security for the payment of its claim and if any balance remained it would remit it to the subcontractor; that when the subcontractor endorsed the checks and they were turned over to the materialman, and he placed the funds in the materialman's general account, so far as the general contractor was concerned, and in the absence of a showing of any other agreement, it was, to that extent, a payment of and should be applied to the account of materials furnished; and that in so far as the general contractor was concerned, it released him as a guarantor. If the materialman, through some private arrangement with the subcontractor, cared to return a part of that money to the subcon-

tractor for his personal use, or place it as payment of an older account or return it for payment of labor, that was a matter resting solely within the discretion of the material-man.''

In *Modesto Lbr. Co.* v. *Wylde* (1933), 217 Cal. 421 [19 P.2d 238] the plaintiff lumber company furnished materials to one Bates as contractor, which materials were used by him in erecting a residence upon property of the defendants. The Modesto Building and Loan Association furnished by way of a loan to the owners the funds necessary to erect the building and agreed with the owners to disburse the funds in such manner as to protect itself and them. The Association issued its check made payable directly to the plaintiff lumber company and entrusted its delivery to Bates with instructions that it be applied on account of the materials furnished for the construction of the building on the property of the defendants. Contrary to these instructions, Bates delivered the check with directions that it be applied on the payment of his personal account with the plaintiff and this was done. Bates failing to pay for the materials furnished, the plaintiff filed its mechanic's lien and brought suit to enforce the same. In holding that it was under a duty to apply the amount of this check upon account of its claim for material used in the construction of the building, the Supreme Court said (page 425):

''The majority rule seems to be that where the materialman is furnishing at the same time materials to a contractor for the construction of buildings upon the property of different owners, the materialman may, in the absence of notice of the source of the funds, accept the same from the contractor and apply them upon any agreed account or as specified by law, even if in such case it develops that the contractor has violated his trust while using the funds of A to pay for materials used on the property of B. (See note, Ann.Cas. 1917C, P. 588; note, L.R.A. 1916D, p. 1259.) But it seems equally clear that where the materialman does have knowledge of the source and ownership of the funds delivered to him by the contractor, he may not apply them on the account of any other than the true owner, even though the contractor may have consented to their application elsewhere. See authorities just cited and also *Hanson* v. *Cordano*, 96 Cal. 441 [31 P. 457]. The concurring opinion of Mr. Justice McKee in the case of *Goss* v. *Strelitz*, 54 Cal. 640, 644, asserts a doctrine as against the materialman even stronger than the above rule.

"But in the case before us we have a situation somewhat different from either the general rule or the exception thereto above noted. Here the materialman had notice that the loan association was financing more than one building and it knew, of course, that the contractor Bates was also constructing more than one structure being so financed. With this knowledge, and with a check payable directly to it and not to the contractor, how could the materialman escape the duty of inquiring of the loan association as to the application of the funds? The check not being made to the contractor was notice to the materialman that the contractor was without authority to determine finally the application of the funds. The agency conferred upon the contractor by entrusting the check to him was merely that of a messenger."

And continuing at page 427:

"We likewise find a situation quite similar in principle to the case before us in *Petersen* v. *Shain et al.*, 4 Cal.Unrep. 122, 125 [33 P. 1086]. There Shain, a contractor, sublet to Petersen & Co., as subcontractors, a portion of the construction work of a building. Mooser, a materialman, furnished materials to Petersen & Co., used on this building, and at the same time had other accounts with Petersen & Co. for similar work at other places. Shain, as part of his settlement with Petersen & Co., for the work done, made two checks payable to that company but delivered them, not endorsed, to Mooser, who in turn procured their indorsement by Petersen & Co., and cashed them, applying the proceeds to other accounts than those in which Shain was interested. It was held that Mooser could not do this to the prejudice of Shain and that in law said proceeds were to be credited to the Petersen job in which Shain was interested.

"In the case of *Bowles Co.* v. *Clark*, 59 Wash. 336 [109 P. 812, 31 L.R.A.N.S. 613], we have almost an exact parallel to the case before us. There the proceeds of a check drawn by the owner in favor of the supply house for the estimated cost of plumbing supplies was by the payee applied as follows: a part to cover the cost of supplies already furnished, a part to balance an older account against the contractor and the remainder of the money was paid to the contractor himself. The supply house later furnished additional materials and filed a lien. It claimed to have received the check in due course. The fact that the check was drawn by a stranger to the supply house was held to be enough to show a property in the check in the drawer. The court there said: 'But we think it too much to say that these circumstances were of such a

nature as to warrant the belief that the property in the check was the property of Fraser (the contractor). The check itself contained a distinct warning to the contrary. It was made payable to the respondent (the supply house), a stranger to the drawer, and not to Fraser, and it is not reasonable to suppose that Fraser would have accepted payment of an obligation due himself in a form which he could not use without the consent and co-operation of a third person.' The above ruling was expressly approved in *Hughes & Co.* v. *Flint,* 61 Wash. 460 [112 P. 633, 634]."

Here, as in the cases cited, if appellant had applied the proceeds of the checks in payment of the materials furnished by it and used in the construction of the buildings upon the property of the respondent, its bill would have been paid in full. If it may reasonably be said, as appellant's argument assumes, that a material dealer, such as the appellant, could be so naive as to fail to understand the purpose and intention of an owner in making checks payable jointly to it and his subcontractor, its customer, appellant was at least under the duty of inquiring of respondent as to his intention with respect to the application of the funds represented by the checks. This appellant admittedly failed to do, and it may not now be heard to say that respondent should bear the loss which it sustained as a result of its own imprudence.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.