[Civ. No. 4465. Third Appellate District.—December 22, 1931.]

## BAY LUMBER COMPANY (a Corporation), Respondent, v. ALBERT M. EATON et al., Appellants.

Samuel J. Crawford for Appellants.

Fogel & Beman for Respondent.

PLUMMER, J.—The plaintiff had judgment in an action to foreclose a mechanic's lien, from which judgment the above-named defendants appeal.

The record shows that Arthur P. Creel, Tommie Creel, his wife; L. Q. Brenson and Cora Brenson, his wife, entered into an agreement with a contractor by the name of Albert M. Eaton for the construction of a building upon certain real estate belonging to the appellants; that thereafter, Albert M. Eaton, as such contractor, purchased of and from the plaintiff, lumber and materials for use in the construction of said building, to the value of $1563.04, upon which there was a credit of $151.12, leaving due the plaintiff the sum of $1411.92. The court found that the lumber furnished by the plaintiff was used in the construction of the building belonging to the defendants, and that plaintiff was entitled to a foreclosure of the mechanic's lien filed by the plaintiff, and directed sale of the lot upon which the building was erected, to satisfy the claim of the plaintiff.

Upon this appeal two grounds only are urged for reversal, to wit: That the testimony does not show that the lumber furnished by the plaintiff was used by the contractor Eaton, and entered into the erection of the building for the defendants, and that payments made by the defendants to the contractor should have been applied toward payment for the materials furnished by the plaintiff to the contractor, for the construction of the building.

A short recitation of the testimony, however, will show that the finding of the court to the effect that the materials furnished by the plaintiff were used in the construction of the building, and became a part thereof, is amply supported. The testimony of the foreman on the job is as follows: After being shown the delivery slips for the material, forty-five in number, furnished by the plaintiff, the foreman testified as follows: "Q. Will you look at 14819 and going down to the end, which is 16849, will you examine those and then state whether all of them were received on the job, and whether all went into the building? If not, if any are there which you did not receive or not received on the job, or did not go into the building, indicate? A. I find two slips number 14951 and number 15000; both have my signature, and they are both for the same

amount of lumber and same material, and I do not see how there could be two of the same kind. Q. You are referring to slip 14951, dated December 17, 1927, and slip 15000, dated December 19, 1927? A. Yes, sir. Q. You say they are both for the same amount? A. The same material. Q. The same material. And you don't see how they could both go into the building? A. No, sir. Q. As to the others you have examined, you say that material was received by you on the job? A. Yes, sir. Q. And did it go into the building? A. Yes, sir; that is why I was hesitating on these because I can recall everything in the building. Q. The credit slip 15226 was included in those you have examined? A. Yes, sir. Q. And that lumber was returned to the Lumber Company, was it? A. Yes, sir. Q. And the credit given? A. Yes, sir." The same witness further testified: "Q. Returning to the sheet number 14591 and sheet number 15000, will you state to the court what that first one, 14951, is for? A. That one is for sheeting on the roof. Q. Sheeting on the roof? A. Yes, sir. Q. And what was the second for? A. I don't know what the second was for; it is for the same thing. Q. It is also for sheeting on the roof, isn't it? A. Yes, sir. But it would not come that way, I would not think. Q. Did you know how much sheeting was put on the roof of that building? A. I don't know. Q. Returning to the third sheet, being number 14140, with the signature 'Albert M. Eaton', do you know Mr. Eaton's signature? A. Yes, sir. Q. Is that his signature? A. Yes, sir. Q. That is the contract? A. Yes, sir. Q. Do you know whether or not that lumber came on the job? A. Yes, sir."

Witness Gaskell, driver for respondent, testified as follows: "Q. I show you the first sheet of plaintiff's exhibit No. 3 for identification, and ask you to examine this sheet which is number 14030, for $40.83. I will ask you if you ever saw that sheet before? A. Yes, sir, I have. Q. Do you notice the items of lumber mentioned on that sheet? A. I do. Q. Did you deliver that load of lumber? A. I did, yes, sir. Q. Where? A. On that Annex Building at Fourth and Broadway. Q. Where, in relation to the building, did you deliver it? A. I put it in the back of it; there was an opening in the back end of the brick walls, to deliver

lumber; the lumber was delivered inside of the building. Q. You left it there, did you? A. Yes, sir." As to the delivery of the other items, the record shows as follows: "Mr. Crawford: We will stipulate the drivers will testify they delivered this lumber in the building. A. In the building. Q. Mr. Crawford: Drove between the walls of the building; the building was not up; they drove in between the walls and dropped it." Mr. Carroll further testified: "Q. You stated you were in charge of the lumber and directed the carpenters working there what pile to go to? A. Yes, sir. Q. Was that during all through the job? A. Yes, sir. Q. Did you check the lumber as it came in? A. Yes, sir. Q. Did you at any time notice any loss of lumber on that job? A. I did not. Q. Did anybody else furnish any lumber on the job besides the Bay Lumber Company? A. Not until the finish, until the finishing lumber, but not rough lumber. Q. Not any of this lumber? A. No. Q. There was no other rough lumber on the job? A. No, sir."

The testimony of Sammons, a witness for the plaintiff, was that, according to their books, lumber to the value of $1563.04 had been furnished upon the job in question, upon which there had been paid the sum of $151.12.

As to the finding of the court regarding nonpayment and application of funds, the record shows that the contractor Eaton was engaged in the construction and completion for the defendants of jobs known as "Job No. 1" and "Job No. 2", and also was engaged in the construction of that certain other building known as the "Pat Doherty" job; also upon the construction of another building known as the "Todd" job. The record further shows that the contractor, in receiving payment for his work, deposited all the payments to his credit in a general account at the bank with which he was doing business, and that from time to time he drew checks on this account in payment for materials furnished by the plaintiff. That there was never any designation by the contractor in making payments, as to what account the payment should be applied, nor does the record show that any information was ever given to the plaintiff as to the particular source from which any particular sum of money was received by Eaton, the contractor, when making payments to the plaintiff.

The record further shows that the defendants made payments to the contractor in sums which, if applied by the contractor, would have extinguished or at least materially reduced the amount for which the plaintiff filed its lien, and for the foreclosure of which it had judgment.

The record shows that the last items of material furnished on both the Doherty and Todd jobs were prior in point of time to the last item of material furnished by the plaintiff for the construction of the defendants' building involved in this action. At the time of a certain payment of $2,000 by the defendants to the contractor Eaton, on December 10, 1927, there was due on the Todd job $3,820. An application of the $2,000 paid by Eaton to the plaintiff was made as follows: $1500 on the Todd job, and $500 on the Pat Doherty job. The last item for material on the Doherty job was June 10, 1927, at which time there was due the sum of $1,091.48. At the time the last payment was applied on the Todd job, there was due $820. "At the time we received some machinery which was turned over, we applied $320.09 on the Todd job; at that time that sum was still due. The rest of the machinery which the contractor turned over, in the sum of $420.48, was applied on the Doherty job." As stated above, the Todd and Doherty jobs were prior in point of time to the delivery of the items making up the several deliveries of lumber by the plaintiff to the defendants in this action. At the time of receiving payments, there being no direction from anyone as to how the payments should be applied, the plaintiff applied the several payments to the accounts which were earliest in maturity, in strict accordance with the provisions of section 1479 of the Civil Code, and strictly in accordance with the opinion of this court in the case of *Madera Sugar Pine Co.* v. *Adams,* 68 Cal. App. 111 [228 Pac. 544]. There is nothing in the case of *Hammond Lumber Co.* v. *Fanta,* 179 Cal. 652 [178 Pac. 503], which conflicts with the holding of this court in the Madera Sugar Pine case. The case of *Hammond Lumber Co.* v. *Fanta, supra,* shows distinctly that the owner of the premises indicated to the lumber company by the assignments of payments specified in the contract that the moneys should be applied upon the payments mentioned in the assignment,

and that the lumber company had full knowledge thereof, and as cited in the case of *Hammond Lumber Co.* v. *Henry,* 87 Cal. App. 231 [261 Pac. 1027], the appellants might have given notice to the plaintiff or taken proceedings such as to convey notice to the plaintiff as to the application of the funds. But as no direction was given to the contractor, and no knowledge conveyed to the plaintiff concerning the payments, the section of the Civil Code which we have cited is controlling. The fact that the plaintiff knew that there were different sources from which the contractor Eaton might receive money is not equivalent to notice or knowledge that the contractor had received any particular payment from any particular source.

In view of section 1479 of the Civil Code, we do not deem it necessary to extend the length of this opinion by citing authorities supporting the action of the trial court.

The judgment is affirmed.

Thompson (R. L.), J., and Preston, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 21, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 18, 1932.