[Civ. No. 4482. Third Appellate District.—January 23, 1932.]

BAY LUMBER COMPANY (a Corporation), Respondent, v. L. M. PICKERING et al., Defendants; LEONARD G. SILLS et al., Appellants.

G. C. De Garmo, H. B. Cornell and W. M. Crane for Appellants.

Dana R. Weller for Respondent.

PARKER, J., *pro tem.*—Action to foreclose a material-man's lien. Appellants are the owners, and the defense interposed by them was that of payment.

From a judgment and decree in favor of plaintiffs the appeal is prosecuted.

The case is presented for review on a stipulation of facts, settled as a bill of exceptions. The facts thus stipulated follow:

"That on the 14th day of September, 1926, defendants Leonard G. Sills and Luella G. Sills as owners of the property described in plaintiff's complaint entered into a contract with defendant L. M. Pickering as contractor, whereby the contractor agreed to erect upon said real property a certain described five-room stucco residence building and garage for the sum of $3,500, payable in instalments as follows, to-wit: $1,000 trust deed upon the execution of said contract and balance in five equal payments of five hundred dollars ($500) each, as follows: First, when the foundation is in and material is on the ground; second, when the building is roughed in and the roof is on; third, when the building is plastered; fourth, when completion papers are filed; fifth, thirty-five days after completion. That at the time of the execution of the building contract defendants Leonard G. Sills and Luella G. Sills executed to the defendant L. M. Pickering their note for $1,000 dated August 28, 1926, payable in monthly instalments of $25 each, with interest from September 15, 1926, at 8 per cent per annum; that said note was secured by a trust deed executed by said owners to the Title Guarantee and Trust Company in trust for the said L. M. Pickering, which said trust deed was on the 18th day of September, 1926, recorded in the office of the county recorder of said Los Angeles county in book 6379 at page 139 of official records; and that said trust deed was the first payment on the building contract above described. That on the 16th day of November, 1926, said L. M. Pickering assigned said note and trust deed to said plaintiff Bay Lumber Company; that on the 22d day of November, 1926, said L. M. Pickering acknowledged before a notary public his signature on the assignment and that on or about said 22d day of November, 1926, said L. M. Pickering endorsed on said assignment the following: 'Mr. H. M. Buchanan, President, West Adams State Bank. Please deliver to the Bay Lumber Company the above mentioned deed of trust which you hold. Yours truly, L. M. Pickering.' That prior to the 16th day of November, 1926, said Bay Lumber Company had furnished to said L. M. Pickering for use in the building above described

the lumber and other building materials described in the complaint in this action. That prior to the 16th day of November, 1926, said L. M. Pickering also constructed a building for one S. C. Arthur on Forty-eighth street in the city of Los Angeles, state of California; that there was at this time owing and unpaid by said L. M. Pickering on account of labor performed and materials furnished for said building the sum of $4,163.71, including the sum of $2,413.70 due said Bay Lumber Company for materials furnished by it for said building, and that at said time said Bay Lumber Company was surety on the statutory 50 per cent labor and material bond executed by said L. M. Pickering as principal and Bay Lumber Company as surety, wherein and whereby said surety undertook and agreed to pay for all labor and materials furnished to said L. M. Pickering for use in the said building of said S. C. Arthur. That on or about the 26th day of November, 1926, said Bay Lumber Company submitted a statement to said L. M. Pickering showing that there was unpaid on account of labor and materials furnished by said Bay Lumber Company and others to said L. M. Pickering for use in the said S. C. Arthur building $4,163.71. That on or about said 26th day of November, 1926, said L. M. Pickering signed the following endorsement, prepared by said Bay Lumber Company, and placed on the bottom of said statement: 'I hand you the following securities to take care of the above accounts as far as it will go: trust deed executed by Leonard G. Sills and Luella G. Sills, $1000.00; note of A. DeLellis, $1000.00; order on S. C. Arthur, $1478.00; less discount on lumber, $313.00; total $3791 balance due Bay Lumber Company $372.01.' Upon receipt from said L. M. Pickering of the note and trust deed for $1,000 executed by Leonard G. Sills and Luella G. Sills, said Bay Lumber Company gave said L. M. Pickering credit for $1,000, but applied said credit on account of materials furnished by said Bay Lumber Company and others for the building of the said S. C. Arthur; that said Bay Lumber Company did not give said L. M. Pickering or said Leonard G. Sills and Luella G. Sills any credit on account of materials furnished by it for the building of said Sills. That at the time of the assignment of said $1,000 note and trust deed to said Bay Lumber Company, said Bay Lumber Company knew

that said $1,000 note and trust deed were the first payment on account of the contract between the said L. M. Pickering and Leonard G. Sills and Luella G. Sills. That the uncontradicted evidence shows that said plaintiff furnished materials to said L. M. Pickering for use in the building of the said Leonard G. Sills and Luella G. Sills. That said materials were used in said building. That said plaintiff filed its mechanic's lien to secure its claim for said materials and commenced its action to foreclose said lien, within the time provided by law. That the value of the materials furnished by said plaintiff was $1,311.04; that said contractor is entitled to a credit of $79.94 on account of materials returned and that the only point raised by this appeal is whether said $1,000 note and trust deed above described should be applied by said Bay Lumber Company on account of materials furnished by it for said Sills building or said S. C. Arthur building.''

It might be noted that the materials furnished by plaintiff and used in the construction of the house, comprised lumber, cement, plastering materials, sand and gravel, hardware and hardwood flooring of the value indicated, namely $1311.04. In passing, it might be fair to assume that the materials thus furnished, practically embraced the entire materials ordinarily used in the construction of a $3,500 house.

Counsel argue that the question presented may be considered as one of first impression in this state, though there seems much authority from other jurisdictions. These authorities are in apparent conflict, and leave our course, to a great degree, uncharted. ■ We may, however, accept the general rule to be that in the absence of anything appearing as to the source of the fund from which a contractor makes payments, a payment made by a contractor to a subcontractor or materialman to whom he is indebted on account of several buildings without any direction as to application, may be applied by the subcontractor or materialman as he desires. (L. R. A. 1916D, 1256, and cases therein cited; 18 R. C. L. 973; *Towle Lumber Co.* v. *Anderson,* 208 Cal. 374 [281 Pac. 500].)

There is then a line of authority, affirming the general rule, but holding that where the materialman knows the source of the moneys paid by the contractor, the rule has no

application, but the money must be applied in discharge of obligations chargeable against its source.

A third view, adopted by respectable authority, is that the source of the money or knowledge by the materialman of that source in nowise controls its application or limits the right of either contractor or materialman in designating the particular debts to be extinguished. The authorities, in their varying conclusions, are gathered in a note found in Ann. Cas. 1917C, 582, and L. R. A. 1916D, 1247. Likewise is the subject fully discussed in Corpus Juris, volume 40, page 344, with collected cases.

The principles of law involved have most frequent application to cases similar to that at bar, where owners have paid to contractors money under building contracts, and the latter have paid the same to the materialman. Throughout the cases we find two distinct lines of reasoning, one based on ideas of fairness and justice, the other on business expediency or the maintenance of the usual and ordinary methods of commercial activity unhampered by undue requirements of caution and speculative inquiry.

The right of a materialman to have declared and enforced his lien against specific property is a right provided to him by the organic law, and shall not be lightly considered. It is true perhaps, that changing conditions have, in some cases, permitted an apparent injustice to result through enforcement of liens against an innocent owner, or one defrauded through the machinations of a dishonest contractor. This fact, while regrettable, hardly suffices as a reason to disregard the provisions of the law, or to become unmindful of the salutary effect thereof. However, the entire purpose of the laws providing for liens of mechanics or materialmen is to secure to them payment for the labor performed or material furnished. Obviously such laws can have no other purpose. So, therefore, under a claim of lien the issue of payment of the demand supporting the lien, if found in favor of the one asserting the affirmative, is determinative of the claim. But there must be some connection between the funds paid and the obligation sued upon.

In the case before us, upon analysis of the stipulated facts, much is left to conjecture. Respondent has made out an admittedly perfect case, almost compelling the relief

asked, save for the one defense urged. This defense, no matter how viewed, is summed up in the contention that appellant has already paid to the contractor the sum of $1,000, and that the respondent has received that money. Let us consider that defense more closely. Let us eliminate, for purposes of discussion, the lien claimant, and assume a controversy between the owner and the contractor. The facts here found show a completion of the building according to the contract. If the contractor had brought suit against the owner for the balance as represented in the present lien claim, it certainly would be no defense for the owner to plead the contract of $3,500, and allege a $1,000 payment thereunder. That is practically the case presented here. We have not before us (nor was it in the court below as far as the record discloses), the building contract. Yet it is a matter of common knowledge that in order to complete a building there must be labor, and generally, painting, plumbing and other expense. Disregarding as speculative, the last-named items, we can conclusively presume the necessity of labor. Also, it is a matter of easy computation to ascertain that the $1,000 paid, plus the claim here of some $1300 in the aggregate, is less than the contract price of $3,500. For aught the record discloses the initial payment of $1,000, or its equivalent in cash, may have been previously expended in the performance of the contract, and if such were the case, the owner could require no further application of this payment. Under the stipulation in this case the materialman had express knowledge that the $1,000 note had been received by the contractor *as a first payment on account of the contract.* This implies knowledge of two things, namely, that more was due, and that there was a contract, which latter knowledge embraced the terms of *the* contract. The admitted contract was for $3,500. How can it be assumed that this particular $1,000 was for the lumber and materials previously purchased?

In the case of *Schallert-Ganahl Co.* v. *Neal,* 91 Cal. 365 [27 Pac. 743, 744], the owner relied upon the defense of payment. There the contractor had procured from the materialman a receipt showing the payment of money for materials on the particular job of one Neal. Upon showing this receipt the agent of Neal obtained the money shown thereby to have been paid. It developed that the receipt,

though given by the materialman, was given through a false statement made to him by the contractor. The owner contended that the money so advanced in reliance on the receipt, should be credited on the demand against her, she relying upon the said receipt. The court in passing upon the question, uses this language: "If, by reason of the presentation of this unauthorized and repudiated receipt to defendant, she had been misled, and thereby paid the contractor, or other creditors, more money than the amount of her indebtedness to the contractor, such fact might create a sufficient prop to support an argument favorable to her claim in this action. But the court found that by reason of the production of said receipt by the contractor, defendant advanced 'further money' to him. The words 'further money', as to amount, are vague and indefinite, *non constat*, but she still had large amounts in her hands applicable to the payment of plaintiff's claim when this action was commenced."

In the case before us, upon its final analysis, all that the record discloses is that appellants have paid out, or at least obligated their property to pay, the sum of $1,000 in exchange for a building of a contract price of $3,500. If we deny respondent a recovery, the net result appears to be that for $1,000 all the obligations of appellants under their contract will have been discharged. If the prevailing thought in the theory of compelling application of payments according to known source is that of fairness and right, there seems no compelling need present in the instant case.

The defense of payment is affirmative, and is never established by mere proof that the claimant has received money; the proof must go further, and establish that the money so received can be applied in discharge of the debt or obligation sued upon. Therefore, we do not feel called upon to determine what, upon a proper showing, would be the effect of the assignment by the contractor, of the note involved.

The appellants, as far as the present record will disclose, are not injured by the judgment. If it develops that the contractor has been paid in full, and that the judgment here involved constitutes an unjust double payment, appellants are not without recourse. There still remains open the same question as attempted to be submitted here in an

action to cancel the note, for the obvious reason that if the lien claim and the note evidenced the same indebtedness, a payment of either would discharge both.

The judgment is affirmed.

Preston, P. J., and Plummer, J., concurred.