[Civ. No. 7023.   Fourth Dist.   Jan. 28, 1963.]

KEWEN R. SAVAGE et al., Plaintiffs and Respondents, v. DON D. NEE et al., Defendants and Appellants.

James A. Hayes for Defendants and Appellants.

Albert E. Nasser for Plaintiffs and Respondents.

MONROE, J. pro tem.*—In 1958 defendants and appellants Nee, being the owners of real property in Buena Park, California, entered into a contract with Mr. R. L. DeJager for the construction on their property of an apartment building. Mr. DeJager entered into a contract with J. C. Guiles, named as a defendant herein and who, as subcontractor, undertook to do the plastering in the apartment building for a full contract price of $24,375. The plaintiffs, doing business as Certified Materials Company, furnished materials to the subcontractor, Guiles. The total price of the materials thus furnished was $9,108.89. The plaintiffs filed their notice of materialmen's lien, claiming that they had received the sum of $2,958.36, and asserting their right to a lien in the amount of $6,150.53. Thereafter, this action was brought to foreclose

*Assigned by Chairman of Judicial Council.

the lien. From a judgment in favor of the plaintiffs for the foreclosure of a lien in the amount as claimed, the defendants Nee appeal.

The defendant Guiles could not be located for service of process and made no appearance.

The main controversy between the parties centers around the application of funds disbursed by the loan agency from whom the defendants and appellants had obtained a construction loan. Insofar as is material to this controversy, the payments in question were represented by four checks as follows:

1. A check dated September 23, 1958 for $6,000.

2. A check dated September 30, 1958 for $6,000.

3. A check dated October 7, 1958 for $10,000.

4. A check dated October 14, 1958 for $2,375.

These checks so issued were made payable to Mr. Nee, Mr. DeJager and Mr. Guiles jointly. It is to be noted that they are in the total amount of Mr. Guiles' subcontract. Apparently in each instance the checks were endorsed by Mr. Nee and Mr. DeJager and delivered to Mr. Guiles.

The first check for $6,000, dated September 23, 1958, was delivered by Mr. Guiles to the plaintiff Savage, who deposited it in his bank account. He thereafter issued a check in the amount of $3,000 to Mr. Glen Gardner, who was engaged in doing lathing work for the sub-contractor, and also issued a check for $1,000 to Mr. Guiles, retaining $2,000, which was credited to the account of the materials furnished for the new apartment by plaintiffs. There is some uncertainty in the record as to what was done with the proceeds of the other three checks from the loan agency. It appears that a day or so after the check dated October 7, 1958 was delivered to Mr. Guiles, the latter gave to the plaintiffs his check for $4,500. This check was deposited and was returned by the bank marked insufficient funds but some days later was redeposited and paid.

Apparently Mr. Guiles owed to the plaintiffs a number of accounts for materials on other jobs. There is evidence to the effect that the plaintiffs used all of the proceeds of the check, except a balance of $958.36, by applying the same in payment of plaintiffs' other bills, and applied that balance to the account of the materials furnished for the construction of defendants' apartment building.

The trial court was confronted with an unusually difficult situation in the trial of the case due to the fact that the actual issues in controversy between the parties were not clearly

defined. The complaint and the answer were in general terms and the pretrial order made no pretense of establishing the issues. Added to this situation was the fact that Mr. Guiles could not be located and his testimony was unavailable.

It was and is the contention of the defendants Nee that there was delivered to the plaintiffs an amount of $10,500 of their money, which was more than enough to satisfy the material bills in controversy; that the plaintiffs, knowing the source of this money and the purposes for which it was paid, saw fit to divert it to other purposes and may not therefore assert a lien against defendants' property.

There was considerable conflict in the testimony with regard to the issues referred to. The court made the following findings of fact insofar as these issues are concerned:

"IX. That the first check in the amount of $6,000.00 for plastering, labor and materials was issued from the construction loan funds of defendants Nee and was endorsed in blank and delivered to plaintiffs, who thereupon endorsed and deposited said check for collection.

"X. That the receipt of said check for $6,000.00 by plaintiffs did not impose any duty on plaintiffs to control the application of said $6,000.00 by defendant Guiles, and did not impose upon plaintiffs any duty of inquiry of defendants Nee, the lender of the construction funds, or the trustee for payment of the construction funds as to the amounts to be applied to the credit of defendants Nee with said plaintiffs for materials furnished in the construction of defendants Nees' building.

"XI. That knowledge of the source of funds from which defendant Guiles paid plaintiffs, did not impose upon plaintiffs the duty to apply the full amount of such funds in the discharge of the obligations owing for materials furnished the building of defendants Nee.

"XII. That the deposit by defendant Guiles of a second check for $10,000.00 from defendants Nee to be used in payment of labor and materials, and subsequent issuance of defendant Guiles' personal check for $4,500.00 to plaintiffs, did not give notice to said plaintiffs that said $4,500.00 came from the Nee construction funds and did not impose upon plaintiffs the duty to apply said $4,500.00 in the discharge of the obligation upon the Nee job."

We are fully aware of the rule, when there is a question as to whether findings are supported by the evidence, that ". . . the power of an appellate court *begins* and *ends* with a deter-

mination as to whether there is any substantial evidence contradicted or uncontradicted, which will support the finding of fact." (*Key* v. *McCabe,* 54 Cal.2d 736, 738 [1] [8 Cal.Rptr. 425, 356 P.2d 169].)

It is to be noted, however, that the findings above quoted partake both of a character of findings of fact and of conclusions of law. Insofar as they are conclusions of law, they are not in conformity with the law as laid down in California.

With regard to the $6,000 check which was turned over to the plaintiffs, there can be little question of their knowledge that it was payment for the Nee apartment job. ▮ If plaintiffs had that knowledge, there was an affirmative obligation to properly apply the money for the benefit of defendants Nee. The law in this regard has been thoroughly discussed in *Modesto Lumber Co.* v. *Wylde,* 217 Cal. 421 [19 P.2d 238], and *Westwood Bldg. Materials Co.* v. *Valdez,* 158 Cal.App.2d 107 [322 P.2d 79]. The cases bearing upon the subject are extensively discussed and reviewed in the *Modesto* case. The court said, on page 425:

"But it seems equally clear that where the materialman does have knowledge of the source and ownership of the funds delivered to him by the contractor, he may not apply them on the account of any other than the true owner, even though the contractor may have consented to their application elsewhere."

It will be noted that the findings referred to deal solely with the question of "notice." Several vital issues of fact are involved. With regard to the $6,000 check, there is evidence indicating that the amounts paid to Mr. Gardner and to Mr. Guiles by the plaintiffs and aggregating $4,000 were actually applied to the cost of labor and materials going into the apartment house. If so, it might well be concluded that regardless of any knowledge or notice on the part of plaintiffs, there was no improper application of the funds.

However, as indicated, these are questions of fact which are not determined by the trial court. The judgment of the trial court appears upon the face of the findings to have been predicated upon the erroneous theory that the plaintiffs had no obligation whatever to defendants Nee for the proper application of the money thus coming into their hands, even though they may have known of its source. Apparently the trial court deemed it unnecessary to make a further factual determination. ▮ To permit a materialman, knowing that money received was placed in his hands to pay the account for

material going into a building, to use such money for other purposes and then enforce a lien against the building, is contrary to the law as stated in the cases referred to.

One other matter is raised upon the appeal. It is contended that the judgment foreclosing the lien applies to more property than was warranted by the proof. Inasmuch as it is necessary to reverse the case, that matter can be readily determined upon a new trial. At the argument there was indication that upon a new trial of the action the testimony of Mr. Guiles will be available. It would doubtless be of a great deal of assistance to the trial court if there was an amended pretrial order clearly defining the issues actually in controversy, so that the receipt of a great mass of irrelevant testimony would not again occur.

The judgment is reversed and remanded with directions for a new trial.

Griffin, P. J., and Coughlin, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied March 27, 1963.