[Civ. No. 29015. First Dist., Div. Three. Jan. 8, 1973.]

EWING IRRIGATION PRODUCTS, Plaintiff and Respondent, v. ROHNERT PARK GOLF COURSE CORPORATION et al., Defendants and Appellants.

## COUNSEL

Knecht, Dingus & Boring and Dix Boring for Defendants and Appellants.

Chandler, Bruner & Blunden, Philip N. Lyons and Stephen M. Chandler for Plaintiff and Respondent.

## OPINION

**CALDECOTT, J.**—The appellants Rohnert Park Golf Course Corporation and the United States Fidelity and Guaranty Company appeal from the judgment entered against them, except for a portion of the interest.

The respondent Ewing Irrigation Products filed a complaint on October 24, 1968, against the appellants and Fairway Landscape Company. The

claim was based on materials furnished Fairway and used in improvements on the Rohnert Park Golf Course Corporation's property. The United States Fidelity and Guaranty Company furnished the labor and material bond. Fairway was adjudicated bankrupt and discharged before the trial.

On November 2, 1967, a construction contract was entered into by the owner and Fairway, the general contractor, for the installation of an irrigation system. United States Fidelity and Guaranty Company, as surety, issued labor and material bonds. The respondent furnished material to the general contractor from January 1968 to May 1968. On June 3, 1968, the general contractor abandoned the project and the surety finished it under its performance bond. The notice of completion was filed on August 27, 1968.

The parties stipulated that on May 21, 1968, the respondent was owed $52,496.37 for materials delivered. On August 12, 1969, the surety paid the respondent $29,640.90, leaving $22,855.47 in dispute.

The respondent at various times employed two types of bookkeeping. Before June 1966, the respondent kept a general account for each of its customers. At that time it switched to individual job ledger cards, for the convenience of its customers. As this procedure made it difficult to determine which debts were 90 days old, necessary for the respondent's factoring arrangement, the respondent reverted to its general ledger procedure in June 1967. Its practice was to apply each payment to the oldest debt.

On February 29, 1968, respondent demanded payment from Fairway on amounts 90 days old. Fairway received a check for $24,975.13 on the Rohnert Park job. After a discussion with Fairway, the respondent received a check for $14,000 instead of the $20,000 demanded. No directions were given as to its application. On April 15, 1968, amounts had again become 90 days old. On demand, the respondent received two checks, one for $1,496.09, and the other for $7,359.38. A condition for the payment was the release of $24,000 worth of materials. The checks followed by a few days the receipt by Fairway of a check for $10,024.87 from the owner. Respondent had knowledge that the $14,000 payment came from a source directly related to the Rohnert Park job. Respondent did not have knowledge of the source of the other two payments ($1,496.09 and $7,359.38). All amounts received were applied by the respondent to the oldest debt due.

A stop notice was filed on a separate job, Larkey Park, on April 9, 1968. A verified complaint was filed on September 16, 1968. Stop notice was filed on the Rohnert Park job on May 22, 1968 and amended on August 12, 1968. The complaint for the instant action was filed on October 24, 1968.

Ray York, the general manager of the respondent, Ewing Irrigation

Products, stated that nothing was due on the Larkey Park job as the funds had been applied there. Summary judgment was then granted against the respondent on the Larkey Park litigation.

In this appeal both parties cite the same cases and both agree that the joint check cases do not control. The argument centers on the meaning and classification of the remaining cases.

The respondent correctly maintains that there are two classes of cases in addition to the joint check cases. These two classes are payment of the materialman directly by the owner, and payment by the contractor. In *Modesto Lumber Co.* v. *Wylde,* 217 Cal. 421 [19 P.2d 238], the owner made a check payable to the materialman and gave it to the contractor to deliver. The contractor, however, changed the owner's instructions and had the check credited to his general account, rather than to the materials delivered for the owner's job. The court held that the materialman, having "knowledge of the source and ownership" of the funds, was under a duty to inquire from the owner as to their application.

The second case in this direct payment class is *Savage* v. *Nee,* 212 Cal. App.2d 417 [28 Cal.Rptr. 106]. Here the project lender issued a check payable to the owner, the general contractor, and the subcontractor. The total of the checks issued this way amounted to the subcontractor's contract. The first check was endorsed by the owner and contractor and delivered to the subcontractor. It was then endorsed to the materialman who promptly returned two-thirds of the check to the subcontractor. The court held that the materialman had an affirmative obligation to apply the proceeds of the check to the materials delivered to the owner's project.

The distinction between the direct payment cases, and payment by the contractor is made clear by two earlier cases and the statute itself. *Johnston* v. *Groom,* 99 Cal.App. 462 [278 P. 935], holds that when there is payment from the contractor to the materialman, the contractor owing the debt for material delivered and used in different jobs, Civil Code section 1479 does apply. No mention is made in the case of the owner or the source of funds. In the same year the Supreme Court held in *S. W. Towle Lumber Co.* v. *Anderson,* 208 Cal. 371 [281 P. 500], that a surety could not direct the application of payments made by the contractor to the materialman. The court stated that section 1479 applied, and that therefore the agreement of the parties was binding. The risk that funds supplied by the surety's principal would be used by the contractor to pay his general account, and in that way satisfy debts incurred on other jobs and not satisfy the debt and lien on the surety's job, was stated to be part of the risk that the surety undertook.

Section 1479 was applied in *Hollywood etc. Co.* v. *John Baskin, Inc.*, 121 Cal.App.2d 415 [263 P.2d 665]. Here the payments were made from owner to contractor, and then from contractor to materialman, with no knowledge on the part of the materialman as to the source of the payment. No direction as to application was given by any party. The contractor apparently had a general account with materialman, and the materialman applied the funds received to the earliest debt. The case was reversed on other grounds. The court made clear, however, that section 1479 did apply, and the application of funds by the materialman was proper under the statute.

The last case in this chain is *Sunlight Elec. Supply Co.* v. *Pacific Homes Corp.*, 226 Cal.App.2d 110 [37 Cal.Rptr. 802]. Both parties to this case admit that the fact situation of *Sunlight* and the current case are extremely similar. Both are actions by the materialman against the owner and surety. Both involve a bankrupt contractor. In each case, as the contractor fell behind in payments, the materialman put pressure on and threatened to stop supplies. In each case the contractor maintained a general account with the materialman. In each case the contractor received funds from some account and paid the materialman a large sum. In each case the materialman applied the payment to the earliest debt, and later brought a lien action against the project that made the payment to the contractor. In each case the funds had been paid to the contractor without directions. The only difference in the two cases is that in *Sunlight* the materialman knew the funds could have come from several jobs,[1] and in the present case the materialman knew the funds were "related" to the Rohnert Park job.

Civil Code section 1479 provides in part, "[w]here a debtor, under several obligations to another, does an act, by way of performance, in whole or in part, which is equally applicable to two or more of such obligations, such performance must be applied as follows: . . ." By the provisions of this statute the direct payment cases and the joint check cases are not applicable in that they do not involve a debtor (owner) under several obligations to another (materialman). Furthermore, as they showed the intention of the owner, as to the application of the funds, the expressed intention would govern rather than the statute. (*B. & J. Constr. Co.* v. *Spacious Homes, Inc.*, 204 Cal.App.2d 216, 223 [22 Cal.Rptr. 41].)

In the case of payment by the contractor to the materialman where the contractor is "under several obligations" to the materialman, section 1479

---

[1] This is not the equivalent to notice or knowledge of the source of the funds. (*Bay Lumber Co.* v. *Eaton*, 119 Cal.App. 362, 367 [6 P.2d 289].)

would, on the face of the statute, be applicable. In the application of this section, however, there is limiting language in a number of cases. In *Modesto Lumber Co.* v. *Wylde, supra,* 217 Cal. 421, 425, the court stated "[t]he majority rule seems to be that where the materialman is furnishing at the same time materials to a contractor for the construction of buildings upon the property of different owners, the materialman may, in the absence of notice of the source of the funds, accept the same from the contractor and apply them upon any agreed account or as specified by law, even if in such case it develops that the contractor has violated his trust while using the funds of A to pay for materials used on the property of B. (See note, Ann. Cas. 1917C, p. 588; note, L.R.A. 1916D, p. 1259.) But it seems equally clear that where the materialman does have knowledge of the source and ownership of the funds delivered to him by the contractor, he may not apply them on the account of any other than the true owner, even though the contractor may have consented to their application elsewhere. See authorities just cited and also *Hanson* v. *Cordano,* 96 Cal. 441 [31 Pac. 457]."

*Modesto* mentions "knowledge of the source and ownership of the funds" citing the *Hanson* case. In *Hanson,* however, the element of ownership of the funds was not present and *Hanson,* like the present case was not a direct payment case. Also, *Hanson* is the only California case on this point included in the *Modesto* reference to "authorities just cited." Thus, apparently ownership of funds is not an essential requirement for the rule.

Several recent cases, *Hollywood etc. Co.* v. *John Baskin, Inc., supra,* 121 Cal.App.2d 415; *S. W. Towle Lumber Co.* v. *Anderson, supra,* 208 Cal. 371; *Bay Lumber Co.* v. *Eaton, supra,* 119 Cal.App. 362 and *Bay Lumber Co.* v. *Pickering,* 120 Cal.App. 163 [7 P.2d 371] have added the element of direction as to the application of the funds to the requirement of knowledge of the source, however, no Supreme Court case has so stated the rule. Of course, if there is direction as to the application of funds, such direction would indicate the intention of the debtor and that intention is controlling. (*J. S. Schirm Co.* v. *Rollingwood Homes Co.,* 56 Cal.2d 789, 795 [17 Cal. Rptr. 1, 366 P.2d 444].) ■ Thus we believe that knowledge of the source of the funds (but not knowledge that the funds could have come from several sources) is sufficient to require application of those funds to the job related to the source.

■ There is, however, an additional factor in the present case. Here, as stated in the findings of fact, the materialman notified the contractor that these payments were being applied against the old balances not related to the Rohnert Park job. This method of payment also was made known to the owner. This is similar to the situation in *Petaluma Building Materials,*

*Inc.* v. *Foremost Properties, Inc.,* 180 Cal.App.2d 83 [4 Cal.Rptr. 268]. In *Petaluma* the court stated at page 86: "However the question of whether a check is received in payment of a debt is one of fact depending on the intention of the parties, and here under the findings of the court the appellants not only were put on notice that respondent was not applying the check to the payment of its claim but expressly agreed by virute of that fact to make all future checks payable to respondent and Dayton."

The present case, though very similar on its facts, is not as strong as *Petaluma,* as the owner did not expressly agree. However, in the present case, the owner and contractor were informed that the materialman was going to apply the payments against other jobs, that at no time did the owner or the contractor expressly direct that the payments be applied to the Rohnert Park job and neither the owner nor the contractor objected to this application of the funds. The intention of the owner and contractor that the payment be applied to old balances other than the Rohnert Park job can be inferred from the facts and circumstances present here. As stated in *J. S. Schirm Co.* v. *Rollingwood Homes Co., supra,* at page 795, "'the question of whether a check is received in payment of a debt is one of fact depending on the intention of the parties.'" Although there is no specific finding of fact on the parties' intention, such can be inferred from the other findings.

■ Relative to the application of the other two payments ($1,496.09 and $7,359.38) the court found that the materialman had no notice of the source of funds and no direction relative to the application of the funds and in accordance with *Hollywood etc. Co.* v. *John Baskin, Inc., supra,* 121 Cal.App.2d 415, 429, the payments could be applied by the materialman to any obligation.

Three statutes cited by the parties as evidence of California policy are of no help here. Penal Code section 484b, making diversion by the contractor a misdemeanor, is an embezzlement statute (see *People* v. *Bullock,* 92 Cal.App. 785 [268 P. 1059]; *People* v. *Holder,* 53 Cal.App. 45 [199 P. 832]), and would not cover the application by a materialman of funds that are admittedly his. *Hollywood etc. Co.* v. *John Baskin, Inc., supra,* held that Business and Professions Code section 7108 applied only to licensed contractors and not to the situation at hand. The only statute cited by the respondent, Code of Civil Procedure section 1200.1, subdivision (b), speaks generally in favor of materialman's liens, and was repealed in 1969.

The appellants argue without citation that the respondent is estopped from pleading application of funds to the Larkey Park job and not to the

Rohnert Park job because in another action the respondent filed verified stop-notices and a verified complaint claiming application of the funds to Rohnert Park. This issue is raised for the first time on appeal. ■ It is well established in California that estoppel is an affirmative defense that must be specially pleaded. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 944, p. 2524.) Therefore, this issue is not properly before the court.

Apparently the appellants are attempting to invoke dicta to the effect that inconsistent facts may not be pleaded in alternative counts in a verified complaint. (See *Beatty* v. *Pacific States S. & L. Co.,* 4 Cal.App.2d 692, 697 [41 P.2d 378]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 299, pp. 1971-1972.) Because of the advantages of alternative pleading, this dicta has been well criticized. There is certainly no reason to extend it to include separate complaints.

In view of our conclusions above, the other points raised by the parties need not be discussed.

The judgment is affirmed.

Draper, P. J., concurred.

A petition for a rehearing was denied February 7, 1973, and appellants' petition for a hearing by the Supreme Court was denied March 8, 1973.