[Civ. No. 40511. First Dist., Div. Three. Feb. 15, 1978.]

PHILLIPS CONSTRUCTION COMPANY, Plaintiff and Appellant, v. ARGONAUT INSURANCE COMPANY, Defendant and Respondent.

## COUNSEL

Behrens, Nelson & Mackey, Robert W. Mackey and Irv Piotrkowski for Plaintiff and Appellant.

Adams & Philipps, Charles J. Philipps and Gregory J. Ryken for Defendant and Respondent.

## OPINION

**SCOTT, Acting P. J.**—Appellant Phillips Construction Company (hereinafter Phillips) sought recovery against Camille Enterprises (hereinafter Camille) and its bonding company, respondent Argonaut Insurance Company (hereinafter Argonaut), for work performed under a construction contract. Subsequent to the filing of the complaint, Camille became bankrupt. Judgment was entered in favor of respondent Argonaut.

Camille was the owner and general contractor-developer of two subdivisions in the City of Petaluma; one subdivision was known as Cherry Valley and the other as Mountain View. Golden West Savings & Loan financed both projects. Respondent Argonaut bonded Camille only on the Cherry Valley project. Phillips subcontracted curb, gutter and sidewalk construction in both subdivisions.

The Cherry Valley work by Phillips commenced first. A month after the Mountain View job started, Phillips submitted an invoice to Camille for $18,000 for work performed on the Mountain View job plus $2,000 as an advance for materials. Camille informed Phillips that further funds would be released on the Mountain View project only with the understanding that these funds be used to pay subcontractors on the Cherry Valley project. Camille's concern was with the fact that subcontractors on the Cherry Valley project had not been paid, despite the fact that Camille had disbursed funds to Phillips on the project, and that these subcontractors might file mechanic's liens which would interfere with the sale of the new homes. The parties agreed to Camille's request. The Phillips voucher relating to the Mountain View job was submitted to Golden West, who issued a check payable to Phillips c/o Camille. Phillips endorsed the check to Camille. Camille and Phillips agreed that Camille would issue a $5,000 check to Phillips for the Mountain View account and four joint checks totaling $15,000[1] to Phillips and its subcontractors on the Cherry Valley project. After initially crediting the Cherry Valley project, Phillips subsequently changed its billing to reflect the total $20,000 as a credit against the Mountain View account.

The trial court found that the four joint checks were properly applied to the Cherry Valley project, which resulted in full payment of the

---

[1] At oral argument Phillips conceded that the total sum from the $20,000 check allocated to the Cherry Valley project was $11,500. The exact sum is not significant in view of our holding.

Cherry Valley contract. It followed that Argonaut, as surety, was not liable to Phillips.

■ Phillips contends that the trial court erred in holding that payments from the Mountain View account could legally be applied to the Cherry Valley project. Phillips argues that because the $20,000 check was made payable directly to it for work performed on the Mountain View project, it had notice that Camille was without authority to determine the application of the funds and the attempt was ineffectual.

■ Civil Code section 1479 provides in part that:

"Where a debtor, under several obligations to another, does an act, by way of performance, in whole or in part, which is equally applicable to two or more of such obligations, such performance must be applied as follows:

"One—If, at the time of performance, the intention or desire of the debtor that such performance should be applied to the extinction of any particular obligation, be manifested to the creditor, it must be so applied."

In accordance with this section, when a debtor directs that a payment be applied to a particular debt, the creditor must apply payment to that debt. Where a creditor and a debtor agree to the application of a payment to a particular indebtedness, the application cannot be subsequently changed if to do so would adversely affect the right of third parties. (*Johnston* v. *Groom* (1929) 99 Cal.App. 462, 464 [278 P. 935].) ■ To change the application of the payment here from the Cherry Valley to the Mountain View project would, of course, adversely affect the rights of Argonaut.

Phillips contends, however, that this case is governed by the holding of *Modesto Lumber Co.* v. *Wylde* (1933) 217 Cal. 21 [19 P.2d 238] and its progeny.[2] In that case, the Modesto Lumber Company and Turner Hardware & Implement Company furnished materials to Bates, a contractor, who agreed to erect a residence on Wylde's property; the Modesto Building and Loan Association financed the construction with a loan to the owner, Wylde. The loan association had knowledge of the

---

[2]Argonaut asserts that this case was tried below on a dispute as to the application of the proceeds from the $20,000 check. It was only in Phillips' posttrial brief that the argument of the *Modesto Lumber* rule was advanced.

terms of the building contract and the contractor had knowledge of the terms of the loan. The owner received no money directly from the loan association. Bates had a general account with both Modesto and Turner as well as special accounts identified by the ownership of the property upon which Bates constructed particular buildings. As a result, Bates owed money to Modesto and Turner in various capacities. The loan association issued a check payable to Modesto and delivered it to Bates with instruction that it be applied to the account of the materials furnished for the construction of the Wylde house. Bates delivered the check to Modesto and requested that it be credited to his personal account; he treated similar checks issued to Turner in like fashion. The issue confronting the court was whether Modesto and Turner had a duty to apply the proceeds of the checks to the Wylde account instead of the personal account of Bates.

The court initially noted that the general rule is that "where the materialman is furnishing at the same time materials to a contractor for the construction of buildings upon the property of different owners, the materialman may, in the absence of notice of the source of the funds, accept the same from the contractor and apply them upon any agreed account or as specified by law, even if in such case it develops that the contractor has violated his trust while using the funds of A to pay for materials used on the property of B." (*Modesto Lumber Co.* v. *Wylde, supra,* 217 Cal. at p. 425.) The court then pointed out that "it seems equally clear that where the materialman does have knowledge of the source and ownership of the funds delivered to him by the contractor, he may not apply them on the account of any other than the true owner, even though the contractor may have consented to their application elsewhere." (At p. 425.) The court recognized that the facts of the case before it differed from both the quoted general rule and the exception in that the materialman had notice that the loan association was financing more than one building and that Bates was "constructing more than one structure being so financed" (at p. 425). Given these circumstances and a check payable directly to it, the court imposed a duty on the material-man to inquire of the loan association as to the proper application of the funds. The court noted (at p. 425) that "The check not being made to the contractor was notice to the materialman that the contractor was without authority to determine finally the application of the funds. The agency conferred upon the contractor by entrusting the check to him was merely that of a messenger." Therefore, the materialmen were required to credit the respective checks received by them to the Wylde building account (at p. 428).

In other fact situations, the recipients of funds have been found to have notice of their intended use or been under a duty to inquire. For example, in *Edwards* v. *Curry* (1957) 152 Cal.App.2d 726 [313 P.2d 613], a general contractor agreed with a materialman, who supplied a subcontractor, to make payments to the subcontractor in the form of a check payable jointly to him and the materialman; the court held that a general contractor has no liability as a guarantor (of the materialman's claim against the subcontractor) where the materialman applied part of the check proceeds to another account with the subcontractor. The materialman was charged with knowledge that the general contractor intended the payment to apply to the materials furnished on the project in question. (152 Cal.App.2d at pp. 730-731.)

*Westwood Bldg. Materials Co.* v. *Valdez* (1958) 158 Cal.App.2d 107 [322 P.2d 79], involved the issuance by the owner of homes under construction of checks made out jointly to the subcontractor and the materialman; although the checks contained no express indication that they were to pay the subcontractor's indebtedness to the materialman, the court held that the materialman was not free to use the checks as he and the subcontractor might agree (at p. 109). The court stated that the mere fact the checks were payable jointly to the subcontractor and the materialman should have alerted the materialman as to the owner's purpose in issuing the checks; the court thus affirmed the trial court's refusal to foreclose a mechanic's lien for the benefit of the materialman (at p. 113).

Despite the holdings of *Modesto Lumber, Edwards,* and *Westwood* that knowledge of the source of funds, or the presence of circumstances suggesting the source, may prevent a materialman from applying these funds to an account other than that intended by the payor, in cases where the owner and general contractor are aware of, and do not object to, the intention of the materialman to apply payments to prior balances due the materialman from the contractor and arising from other projects, the application is effective and the materialman can recover from the contractor and the owner for the materials provided. (*Ewing Irrigation Products* v. *Rohnert Park Golf Course Corp.* (1973) 29 Cal.App.3d 862, 868 [105 Cal.Rptr. 812].) A similar result obtains where there is an express agreement. (*Petaluma Building Materials, Inc.* v. *Foremost Properties, Inc.* (1960) 180 Cal.App.2d 83 [4 Cal.Rptr. 268].)

Phillips asserts that here there is no evidence that Golden West consented to or was aware of Camille's plan to apply the Mountain View

payment to the Cherry Valley project; therefore, Camille was without authority to determine the use of the funds and Phillips was obliged by law to credit its Mountain View account with the payment. Phillips urges that the *Modesto Lumber* rule be extended so as to prevent an owner-contractor from applying loaned funds to projects covered by different loan agreements. It maintains that where the owner is involved in the reapplication of funds from the lender, the *lender* needs the protection of the rule since the amount of the construction loan will usually exceed the value of the unimproved land and the lender will thus be looking to the increasing value of the improvements as construction progresses. In light of these factors, Phillips contends that the *Modesto Lumber* rule should be broadly applied so as to protect the lender.

Phillips' argument in favor of the extension of the *Modesto Lumber* rule to protect the lender is not compelling. Camille's and Phillips' agreement to apply part of the proceeds of the Golden West loan to the Cherry Valley account did not threaten the security interest of Golden West. A lien arising subsequent to a loan agreement between a lender and an owner providing for installments is subordinate to the lender's interest. (See 3 Witkin, Summary of Cal. Law (8th ed. 1973) Security Transactions in Real Property, §§ 46-50, pp. 1531-1534.) Phillips' argument that the allocation of a payment according to its source is necessary to ensure that there is adequate security to cover the amount of the loan is misapplied to cases like the present. Here nearly all of the payment in question was for work that had been *completed* on the Mountain View project. The conduct of neither Camille nor Phillips endangered Golden West's position.

The present case reveals an additional reason why it is not necessary to extend the *Modesto Lumber* rule to cases in which the owner is also the contractor. Here the voucher signed by Phillips and submitted by it to Golden West contains a waiver by Phillips of all rights to liens on the Mountain View project up to the time of the invoice. In addition, Phillips warrants that all labor and materials furnished by others (materialmen) have been fully paid for as of the time of the invoice. This device indicates that the lender is in a good position to take steps to ensure he is protected from threats to his security interest in the owner's property.

In light of this strong position of the lender, there is no reason to create a judicial exception to the provision of Civil Code section 1479 which gives the debtor the power to determine, by indication to the creditor, to

which of several obligations owed to the creditor the debtor's performance applies.

We conclude that Phillips is not within the class of persons protected by the *Modesto Lumber* rule. The concern of the courts in *Modesto Lumber* and its progeny is with the inability of an owner to protect himself from the misapplication of construction funds and with the injustice of compelling him to pay twice for labor and materials in circumstances where a subcontractor or materialman caused the misapplication. Where the owner, as in the present case, agrees to a particular application of funds, there is no reason for the rule.

Judgment is affirmed.

Feinberg, J., and Brown (I. A.), J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.