[Nos. G049907, G049910. Fourth Dist., Div. Three. Oct. 14, 2014.]

PALOMAR GRADING & PAVING, INC., et al., Plaintiffs and Respondents, v.
WELLS FARGO BANK, N.A., et al., Defendants and Appellants.

[And eight other cases.*]

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

---

*TNT Grading Inc. v. Wells Fargo Bank, N.A. (No. RIC495881); Cass Construction v. Wells Fargo Bank, N.A. (No. RIC496900); Advance Contracting v. Wells Fargo Bank, N.A. (No. RIC497777); Murrieta Oaks v. Wells Fargo Bank, N.A. (No. RIC501042); R3 Contractors v. Wells Fargo Bank, N.A. (No. RIC507764); Republic Intelligent v. Wells Fargo Bank, N.A. (No. BAC011002); Independent Electric v. Wells Fargo Bank, N.A. (No. BAC010605); X-C Hub Construction v. Wells Fargo Bank, N.A. (No. BAC010737).

†Pursuant to California Rules of Court, rule 8.1110, only part III.J. of this opinion is certified for publication.

**COUNSEL**

California Appellate Law Group, William N. Hancock, Ben Feuer; Fidelity National Law Group and James A. Moss for Defendant and Appellant Wells Fargo Bank.

Manning & Kass, Ellrod, Ramirez, Trester, Darin L. Wessel and John D. Marino for Defendant and Appellant Kohl's Department Stores.

Stuart D. Hirsch for Plaintiff and Respondent Palomar Grading & Paving, Inc.

Wheatley, Scott & Company and Raymond D. Scott for Plaintiff and Respondent R3 Contractors.

Law Offices of Gregory J. Hout and Gregory J. Hout for Plaintiff and Respondent Cass Construction.

**OPINION**

**BEDSWORTH, J.—**

I.–II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III.   DISCUSSION

A.–I.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

J.   *Did the Trial Court Err in Awarding the Lien Claimants Prejudgment Interest at 10 Percent, as Distinct from 7 Percent, as Against the Noncontracting, Innocent Owners? Yes.*

This is the only part of this opinion certified for publication, so we set forth a brief précis of the relevant facts for the benefit of those readers who will not have access to the balance of the opinion: In 2007, a developer named Inland engaged a general contractor called 361 to develop a Kohl's department store and surrounding property on a tract in Beaumont. The construction lender was Wachovia Bank. General contractor 361 contracted with, among others, Palomar Grading & Paving, Inc. (Palomar Grading) and Cass to do infrastructural work benefitting the tract. As it turned out, both Kohl's and Wachovia ended up owning parcels in the tract. Neither, however, ever entered a contract with the two subcontractors. Palomar Grading and Cass were not paid for substantial portions of their work, and brought

---

*See footnote, *ante*, page 686.

successful actions to foreclose their mechanic's liens.[24] The trial judge awarded them prejudgment interest at 10 percent,[25] and now Kohl's and Wells Fargo Bank, N.A., as Wachovia's successor, are challenging that decision. We write on a clean slate. No published case has considered the issue.[26]

■ There is a default rate of interest prescribed by the Constitution in article XV, section 1, for the "forbearance of any money, goods, or *things in action*, or on accounts after demand, shall be 7 percent per annum . . . ." (Italics added.) Things in action obviously include the right to foreclose on a mechanic's lien. The Legislature, however, has enacted Civil Code, section 3289, subdivision (b), specifying that the default *for breach of contract* is 10 percent.[27] The lien claimants in this case argue for the applicability of section 3289's 10 percent, as distinct from the constitutional default rate of 7 percent.

---

[24] The unpublished balance of this opinion is largely taken up explaining why Cass's and R3's judgments of lien foreclosure are being affirmed.

[25] We have determined that the decision to award Palomar Grading and Cass prejudgment interest in the first place was a correct one because the precise amounts owed were ascertainable from the initial recording of their liens. (Cf. *Forsgren Associates, Inc. v. Pacific Golf Community Development LLC* (2010) 182 Cal.App.4th 135, 159–160 [105 Cal.Rptr.3d 654] [prejudgment interest not appropriate where precise amount of liens on respective properties had not been ascertained by trial court].)

[26] In their briefing, the parties dispute the precedential value of the published portion of *Royster Construction Co. v. Urban West Communities* (1995) 40 Cal.App.4th 1158 [47 Cal.Rptr.2d 684]. Answer: It has no precedential value on the interest rate point, even by inference. In *Royster*, a mechanic's lien claimant was awarded prejudgment interest at 10 percent (*id.* at p. 1164), and the appellate court squarely ruled that the judgment had to be modified to reduce the prejudgment interest to 7 percent (*id.* at p. 1171). But why? We do not know. The panel certified *Royster* for publication, excepting its part 3 involving prejudgment interest. (*Id.* at p. 1158, fn. *.) Strictly speaking, then, while we know what the court *did*, we do not know *why* the court did it. The California Constitution says that "Decisions of the Supreme Court and courts of appeal that determine causes shall be in writing with reasons stated," but in the case of *Royster*'s determination that the trial court erred in awarding 10 percent, as distinct from 7 percent prejudgment interest, there were, for our purposes here, no reasons stated. (Cal. Const., art. VI, § 14.) *Royster*'s determination, ensconced in the nonpublished part of the opinion, is the functional equivalent of the summary denial of a petition for writ by the Court of Appeal; it did not determine any cause, and thus has no precedential vale. (See *People v. Kelly* (2006) 40 Cal.4th 106, 116, fn. 1 [51 Cal.Rptr.3d 98, 146 P.3d 547].)

[27] All statutory references are to the Civil Code. And, as explained in the unpublished portion of this opinion, California's mechanic's lien law used to occupy sections 3082 through 3267. Now it occupies sections 8000 through 9566. The switch-over date was July 1, 2012. The Legislature specifically provided that the old law would govern for mechanic's liens recorded before that date. (See § 8052.) Section 3289, however, as it currently stands, was unaffected by the 2012 mechanic's lien statutory switch-overs. The statute provides:

"(a) Any legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation.

■ We determine it is the constitutional default rate that should apply to prejudgment interest on a mechanic's lien as applied to noncontracting, innocent owners. Unlike section 3289, the prejudgment interest statute, section 3287 applies to both contract and tort actions. (See *Marine Terminals Corp. v. Paceco, Inc.* (1983) 145 Cal.App.3d 991, 995 [193 Cal.Rptr. 687].) Torts generally do not involve obligations incurred by contract.

The salient fact here is that the owners of the property had no contract with either Palomar Grading or Cass. The liens on the property are the result of the imposition of the mechanic's lien laws, not contract. The comments of an appellate panel from the depths of the Great Depression summarize the essence of the legal relationship: "The right of a materialman to have declared and enforced his lien against specific property is a right *provided to him by the organic law,* and shall not be lightly considered. It is true perhaps, that changing conditions have, in some cases, permitted *an apparent injustice to result through enforcement of liens against an innocent owner, or one defrauded through the machinations of a dishonest contractor.*" (*Bay Lumber Co. v. Pickering* (1932) 120 Cal.App. 163, 167 [7 P.2d 371], italics added.)

■ We must not forget that, as explained by our Supreme Court in *Connolly Development, Inc. v. Superior Court* (1976) 17 Cal.3d 803, 811 [132 Cal.Rptr. 477, 553 P.2d 637], the operation of mechanic's liens *do* constitute a "taking" of an owner's interest in its property: "The owner whose property has been subjected to a mechanic's lien has suffered at least as serious a deprivation as did the plaintiffs in [two United State Supreme Court cases], and thus cannot be denied the protection of the due process clause." (*Id.* at p. 812.) But the taking is *justified,* in terms of an owner who is innocent of breaching a contract with an unpaid lien claimant, precisely because the owner's property has been benefitted by the work or material of the lien claimant. "The purpose of a mechanics' lien is to prevent unjust enrichment of a property owner at the expense of laborers or material suppliers." (*Basic Modular Facilities, Inc. v. Ehsanipour* (1999) 70 Cal.App.4th 1480, 1483 [83 Cal.Rptr.2d 462].) But that benefit is not necessarily the result of an owner's *contract* with the lien claimant. Just as prejudgment interest can be given in tort cases, an owner who did not contract with a lien claimant can be legally exposed to prejudgment interest. It follows, then, that the statutory default rate for *contract* breaches of 10 percent should not be applicable to innocent, noncontracting owners, who are analogous to tort defendants, not contract defendants.

The lien claimants here posit two theories against our conclusion. Palomar Grading's is direct. It simply is not "fair," says Palomar Grading, to charge

---

"(b) If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach.

"For the purposes of this subdivision, the term contract shall not include a note secured by a deed of trust on real property."

10 percent against the "improver of land"—by which it appears Palomar Grading means a general contractor who breaches a contract with a subcontractor—and let an owner get away with only 7 percent. But it *is* fair, when one realizes the owner's loss is a matter of operation of law, not voluntary choice. Unfortunately, general contractors sometimes stiff their subcontractors after taking money from the owner or the owner's banker. In that situation the mechanic's lien law in effect forces innocent owners to pay twice. To be sure, their paying twice may be justified by the special solicitude shown toward unpaid contractors and material suppliers by the mechanic's lien law—that law is, after all, part of the California Constitution (art. XIV, § 3)—but the justification for the loss of property in the case of innocent owners is certainly not that they *agreed* to it. Thus it is perfectly "fair" that the defaulting contractor that breached its contract should have to pay a higher rate than an innocent owner who did not.

■ Cass makes a different argument. It focuses on its right to recover the amount due according to its contract. For Cass, because it is "entitled to recover the amount due pursuant to its contract" it should receive 10 percent interest, period. But that logic ignores former section 3123. The statutory language was: "The liens provided for in this chapter shall be direct liens, and shall be *for the reasonable value* of the labor, services, equipment, or materials furnished *or* for the *price agreed upon by the claimant and the person with whom he or she contracted*, whichever is *less*." (*Id.*, subd. (a), italics added.) Thus a lien claimant does not *necessarily* receive the amount due on its contract. Again, we see that insofar as the mechanic's lien laws act on an innocent owner, the obligation is noncontractual—*limited by statute* to the reasonable value of work when it is less than the contract.

Cass's brief also cites some language from a comment apparently in the 4th edition of the respected Marsh treatise on mechanic's lien law, to the effect "it is safe to say only that the lien claimant's right to interest is limited to the legal rate (now 10%)." There are two answers to the proffered quotation: One, the quotation only refers to a *limit*, not what is actually appropriate, and does not—at least in the snippet Cass gives us—address prejudgment interest as such. And two, while the "safe to say" language might have been found in the 4th edition of Marsh, it is not to be found in section 4.75 of either the hard copy of the current 6th edition or the current online version. (See 1 Marsh, Cal. Mechanics' Lien Law (6th ed. 2011) § 4.75, pp. 4-129 to 4-132.) Moreover, that particular section of Marsh is

written as a practice guide from the point of view of an attorney for a lien claimant, and the thrust of the section is *not* "this is the law," but "there's no harm in trying."[28]

Obviously our brief decision in regard to the prejudgment interest issue does not address the question of prejudgment interest in the case of culpable, contract-breaching owners, that is, owners who breach their contracts with contractors or materials suppliers and for *that* reason have a mechanic's lien slapped on their property. We also do not address the possibility (far-fetched to be sure) of a sham change in ownership (from say, a breaching owner to an ostensibly nonbreaching one) done deliberately to try to gain a better interest rate. Our decision today only applies to "innocent" owners who, even though they did not breach their own contracts, nonetheless wound up with property subject to a mechanic's lien.

Because this part is self-contained in the context of this partially published opinion, we state our disposition as to the prejudgment interest issue now: The judgment is reversed insofar as it provides for a rate of prejudgment interest at 10 percent and is remanded for a recalculation at the rate of 7 percent. The topic of appellate costs is covered in the unpublished disposition.

## IV.   DISPOSITION*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Rylaarsdam, Acting P. J., and Aronson, J., concurred.

---

[28] We will quote the current (2014) comment in its entirety here: "Under current statutes and decisions, it appears *that there is no prohibition against claiming interest* (and/or damages) *according to agreement, or at 10 percent from date of breach*, but it should be recognized that the lien or stop notice as such creates no special remedy in this regard. *On the other hand*, the lien on the owner's property is limited by Civil Code section 8430(a) to agreed price or reasonable value, whichever is less—so that is a matter for the judge or jury in any particular trial court and case." (1 Marsh, Cal. Mechanic's Lien Law (accessible on Lexis Advance, database updated 2014).)

This is not exactly a ringing endorsement of the idea that the law *requires* 10 percent prejudgment interest against innocent owners.

*See footnote, *ante*, page 686.